## GUGGENHEIM v. UNITED STATES.
### No. 500–52.

United States Court of Claims.
Dec. 1, 1953.

Edmund W. Pavenstedt, New York City, for plaintiff. A. Chauncey Newlin and White & Case, New York City, were on the brief.

Elizabeth B. Davis, Washington, D. C., with whom was Asst. Atty. Gen., H. Brian Holland, for defendant. Andrew

D. Sharpe and Ellis N. Slack, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER and MADDEN, Judges.

MADDEN, Judge.

This is a suit for the refund of estate taxes paid by the estate of Murry Guggenheim, of whose estate the plaintiff is the executor.

In 1923 Murry Guggenheim and three of his brothers jointly created a trust for the benefit of a fifth brother, William, and each contributed one-fourth of the assets of the trust. The trust instrument directed the trustee to pay the income to William during his life, after his death, to his wife Aimee for her life, but if William's son, William Jr., should survive him and reach the age of 21, he was to have one-fourth the income until he reached the age of 30, and thereafter half the income during his and Aimee's lives, and if he survived Aimee, all the income for his life.

The trust instrument further provided that upon the deaths of William, Aimee, and William Jr., the corpus of the trust property should be conveyed to the lawful issue of William Jr., him surviving, *per stirpes.* If there were no such issue, the corpus should be transferred back to the four creators of the trust in equal shares, and if any of the creators of the trust should not be then living, his share was to go to those who would take, under the New York statutes, intestate personal property left by him.

Murry Guggenheim died on November 15, 1939, at the age of 81. He was survived by his brother William, then 71; William's wife Aimee, then 61; William's son, William Jr., then 32; and William III, son of William Jr., then about 8 months old. The parties have stipulated that, in these circumstances, the chance, immediately prior to Murry Guggenheim's death, that the line of William Jr. would die out and the one-fourth of the trust property contributed by Murry Guggenheim would revert to him, was negligible, and was worth less than five percent of the value of his contribution to the trust assets.

In 1941 a Federal estate tax return was filed for Murry Guggenheim's estate. It did not include any part of the trust property as a part of the estate. The Bureau of Internal Revenue, in auditing the return, added $65,380.77 to the assets of the estate, on account of the trust. Certain other adjustments, not here involved, were made. The plaintiff executed and filed a waiver on Treasury Department Form 890, consenting to the assessment. In the waiver, the plaintiff agreed "not to file or prosecute any claim for refund of estate taxes for the above-named estate." The waiver contained the statement that it was not "a final closing agreement under Section 3760 of the Internal Revenue Code [26 U.S.C.A. § 3760] and does not, therefore, preclude assertion of a further deficiency in the manner provided by law, should it subsequently be determined that additional tax is due." No closing agreement was made under Section 3760, nor any compromise under Section 3761, of the Internal Revenue Code. The estate tax was assessed and on December 1, 1942, was paid upon a valuation which included the $65,380.77 added by the Bureau of Internal Revenue on account of the trust.

On October 25, 1949, Congress enacted the Technical Changes Act of 1949. Section 7 of that act amended Section 811 (c) of the Internal Revenue Code, 26 U.S.C.A. § 811(c), to provide that in the case of a transfer of an interest in property made prior to October 8, 1949, by one who died after February 10, 1939, nothing should be included in his gross estate by reason of the retention, in the transfer, of a reversionary interest in the property transferred unless the value of the interest immediately before the death of the decedent exceeded five percent of the value of the property. The section further provided that if the recovery of any tax that had been paid was

barred by any law, other than the Sections 3760 and 3761 referred to above, relating to closing agreements and compromises, the tax should nevertheless be refunded, if a claim for its refund was filed before October 25, 1950. The act, of course, amended the law for the future, as well as for the past.

The plaintiff filed his claim for refund on October 9, 1950, basing it on the Technical Changes Act referred to above. In May 1952, the Government denied the claim. The basis for the denial was that the plaintiff's case was not covered by the Technical Changes Act, since the provision of that act relied on by the plaintiff applied to transfers "intended to take effect in possession or enjoyment at or after (the grantor's) death." The Government said, and insists here, that Murry Guggenheim's transfer of assets to the trust gave the right of immediate enjoyment to the beneficiaries of the trust, not at all contingent upon his, the grantor's, death. It says that Section 811(c) applied only to cases where the transferee had to survive the grantor in order to obtain the property.

Since the tax here in question was assessed and, in 1942, was paid, pursuant to Section 811(c) which applied to transfers "intended to take effect in possession or enjoyment at or after (the grantor's) death," the Government is saying, in effect, that the tax should never have been assessed in the first place; that it was wrongfully assessed and collected, and the right to recover it was barred because no claim for refund was filed within three years after its payment. Whether its refund, if timely demanded, would have been made, or would have been barred by the waiver which we have quoted above, the Government does not say.

■ The general purpose of those provisions of the Technical Changes Act of 1949 which are here involved was, no doubt, to give back to taxpayers the money which had, the Congress thought, been collected from them under a law which, as interpreted and applied, was unrealistic and unjust. Congress thought that contingencies and possibilities had been assessed and taxed as if they had great value, when in fact they had little value. Congress did not, of course, intend to waive the statute of limitations and permit recovery of all estate taxes which had, for any reason, been wrongfully assessed and collected during a ten-year period. It was aiming at a particular evil, the assessment at high values of mere possibilities owned by a decedent at the time of his death, which in reality had little or no value.

■ In fact, these taxes had been collected under the provisions of Section 811(c), as upon interests in property of which the decedent had made a transfer "intended to take effect in possession or enjoyment at or after his death". It was under the provisions of this statute that the taxes here in question were assessed against the estate of Murry Guggenheim. The injustice of the assessment was the injustice which Congress recognized in 1949, the attribution of great value to something that was substantially worthless. Hence the evil at which the 1949 statute was, in general, aimed, was the evil under which this estate suffered. And the statute which the 1949 legislation amended was the statute on the basis of which the unjust tax had been imposed.

The Government says the relief statute does not apply because the Government over-reached itself when it assessed the tax. It insists that it not only taxed as valuable something which had little value, but that it had no business taxing it at all; that this estate suffered not only the injustice inherent in Section 811(c) as written and lawfully applied, but the further injustice of having it unlawfully applied; and therefore is entitled to no relief.

■ When Congress, in 1949, set out to give relief to those taxpayers who had been required to pay heavy taxes

884

upon relatively worthless assets, because their decedents owned interests in property of which they had made transfers "intended to take effect in possession or enjoyment at or after (the grantor's) death," we think it intended that relief for all taxpayers who had been required to pay such taxes under Section 811(c) as interpreted and administered. The principle that a relief statute should be liberally interpreted to reach the evil that it was intended to cure is directly applicable.

The fact that the Government, in applying Section 811(c) to this estate in 1941, stretched the statute, as it now insists, beyond the breaking point, seems to us to be irrelevant. There was confusion in the Bureau, and in the courts, as to what situations were covered by Section 811(c).

The Treasury's own Regulation, promulgated after the Supreme Court's decision of Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, in 1940, expressly applied Section 811(c) to a transfer such as the one here involved. T.D. 5008, 1940—2 C.V. 286 amending Reg. 105, Sec. 81.17. Not until May 1, 1946, did the Treasury revise its Regulation to give Section 811(c) the meaning which it now attributes to it. T.D. 5512, 1946—1 C.B. 264 amending Sec. 81.17, Reg. 105. Even today, long after the event, and with the benefit of all the decisions made between 1941 and 1949, the parties dispute vigorously as to what was the accepted interpretation of Section 811(c) during those years. We do not propose to attempt to resolve that dispute. We think Congress, in 1949, had no idea of limiting its relief so narrowly, and so indefinitely, that all of this old straw would have to be threshed to find the kernel of relief.

The plaintiff may have a judgment for $36,766.31, with interest according to law.

It is so ordered.

JONES, Chief Judge, and WHITAKER and LITTLETON, Judges, concur.

Findings of Fact

