**BANK OF NEW YORK and Julia Giles as Surviving Executors of the Estate of Sarah Jewett Robbins, Deceased, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.

July 8, 1955.

**446**

Appleton, Rice & Perrin, New York City, John D. Kernan, Jr., New York City, Clarence B. Higgins, New York City, of counsel, for plaintiffs.

J. Edward Lumbard, U. S. Atty., for Southern Dist. of New York, New York City, Morton S. Robson, Asst. U. S. Atty., New York City, of counsel, for defendant.

DAWSON, District Judge.

This is an action by the executors of an estate (hereafter referred to as "the taxpayer") for the refund of that part of an estate tax that was imposed, under § 811(c) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 811(c), due to the inclusion in the taxable estate of certain inter vivos transfers. The tax was paid in 1941, but § 7 of the Technical Changes Act of 1949, 63 Stat. 891 (hereafter referred to as the "T.C.A."), amended § 811(c) retroactively and lifted the bar of the statute of limitations on resulting refund claims. This case turns upon the effect to be given to that Act.

Both parties have conceded or stipulated all of the material facts and moved for summary judgment pursuant to Rule 56, 28 U.S.C.A.

The jurisdiction of this Court is claimed under 28 U.S.C.A. § 1340 (1950). See 28 U.S.C.A. § 1346(a) (1) (1950) as amended by 68 Stat. 589 (1954).

.The Facts

The following facts exist without substantial controversy:

Mrs. Robbins, the decedent, died on March 9, 1939, at the age of 77. She had established two trusts in May, 1930, and two in August, 1935. Nothing was included by the taxpayer in the estate tax return on account of the trusts, but the Commissioner included the value of the entire corpus, less the interest of the life tenant, in the case of one of the 1930 trusts and in each of the 1935 trusts. This was done by the Commissioner on the ground that:

"The transfer was intended to take effect in possession or enjoyment at decedent's death and comes within the provisions of Section 302(c) of the Revenue Act of 1926, as amended." (Thirty-Day Letter, dated July 22, 1941, at page 3.)

The Commissioner should have referred to § 811(c) of the 1939 Code (see 26 U.S.C.A. § 800 (1948) ), but there is no material difference.[1]

---

1. "(c) Transfers in contemplation of, or taking effect at death. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of

In 1941, the taxpayer paid the deficiency tax which amounted to $42,035.02, before being reduced by certain credits which arose during the audit. Interest was also paid in the amount of $2,653.89. No closing statement or compromise was made or filed pursuant to 26 U.S.C.A. §§ 3760, 3761 (1940).

The three-year statute of limitations, 26 U.S.C.A. §§ 910, 937 (1948), on refund claims ran out in September or November of 1944.

After the T.C.A. (also known as Public Law 378) became law on October 25, 1949,[2] the taxpayer filed a claim for the refund of the amounts stated above. The date of the claim was Otcober 24, 1950.

Two years later, the Commissioner denied the claim, giving the reason that:

"Prior to the enactment of Public Law 378, a transfer under the terms of which the beneficiaries need not survive the decedent in order to obtain possession or enjoyment of the transferred property was not considered to be one intended to take effect in possession or enjoyment at or after the decedent's death, within the meaning of section 811(c) of the Code. Public Law 378 made no change in that respect. In the instant case, possession or enjoyment of the transferred property could have been obtained by beneficiaries during the lifetime of the decedent. Accordingly, the transfers were not intended to take effect in possession or enjoyment at or after the dece-

dent's death, and the relief provided by section 7 is not applicable in this case."

The Commissioner's contention was, therefore, that no tax was due under § 811(c) of the Code; that the Revenue Agent's determination that such tax was due was erroneous and could have been contested by the taxpayer at the time; that since the tax was not properly imposed under § 811(c), the lifting of the ban of the statute of limitations contained in § 7 of the T.C.A. is not applicable inasmuch as that section applied only to taxes properly imposed under § 811(c).

The terms of the trust instruments were such that it was not necessary for the beneficiaries to survive the grantor of the trusts to come into possession of the corpora of the trusts.

It is conceded by the government that the actuarial values of the possibilities of reverter, i. e., that the principals would come back to the decedent or her estate, were, as of the time immediately before her death, less than 5% of the principals in each trust.

### Contentions

The taxpayer's argument runs as follows:

1. The Commissioner included the trusts in the taxable estate on the authority of § 811(c) of the 1939 Code.

2. § 811(c) was the appropriate authority for the inclusion prior to the T.C.A.

3. Under § 811(c) as amended retroactively by T.C.A. §§ 7(a) and 7(b),

---

a bona fide sale for an adequate and full consideration in money or money's worth. * * *"

2. "(a) Section 811(c) of the Internal Revenue Code * * * is hereby amended to read as follows:

" '(c) Transfers in Contemplation of, or Taking Effect at, Death.—

" '(1) General Rule. To the extent of any interest therein of which the decedent has at any time made a transfer * * * by trust or otherwise * *

" '(C) intended to take effect in possession or enjoyment at or after his death.

" '(2) Transfers Taking Effect at

Death. Transfers Prior to October 8, 1949. An interest in property of which the decedent made a transfer, on or before October 7, 1949, intended to take effect in possession or enjoyment at or after his death shall not be included in his gross estate under paragraph (1) (C) of this subsection unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property.' ".

nothing should have been included on account of the trusts.

4. T.C.A. § 7(c) lifts the bar of the statute of limitations and so a refund is due.

The government's contentions are:

1. The tax was collected pursuant to the provisions of § 811(a) and therefore claim for refund is barred by the statute of limitations, inasmuch as § 7(c) of the T.C.A. extends the period for refunds only where the right to a refund results from a tax imposed by § 811(c).

2. If this tax was assessed pursuant to § 811(c), such assessment was erroneous and claim for refund could have been made within the statutory time.

### Discussion

So far as the government's first contention is concerned, it suffices to say that the tax was not imposed under § 811(a). The Thirty-Day Letter shows that the tax was asserted to be due under § 811(c).

If the tax had been imposed under § 811(a), all that could have been taxed was the possibility of reverter but, in fact, what the government taxed was the entire corpora of the trusts, less the life estates. A tax under § 811(a) could have been imposed only on what the decedent owned at the date of his death and not on what he had transferred.

However, at the time when the tax was imposed, it was imposed upon property which had been transferred by the decedent, and was imposed in accordance with § 811(c) and under the regulations then in effect. These regulations indicated that the tax on property so transferred under § 811(c) should be upon the full value of the property, less outstanding life estates. P–H 1946 Federal Tax Service, Vol. 3, p. 23269. This was the basis upon which the tax was assessed.

Thus, the tax was imposed upon the basis of a value of $240,600, which was the value of the corpora of the trusts, less the life estates, but if the tax had been imposed upon merely a possibility of reverter, the amount which could have been so taxed would have been less than $26.500.

 The government's contention that the tax was imposed under § 811(a) is therefore not correct as a matter of fact, nor, under the regulations in effect at the time, would it have been so imposed.

We come now to the next contention of the government which is that if the tax was assessed pursuant to § 811(c), such assessment was erroneous and claim for refund could have been made within the statutory time. The government urges that the tax was erroneously assessed under § 811(c) on the ground that the assessment of the tax under § 811(c) was limited to trusts where the trust instrument provided that "possession or enjoyment of the transferred interest can be obtained only by beneficiaries who must survive the decedent."

However, neither the regulation then in effect nor controlling Court decisions up to that time had so determined.[3] The amendment to the regulation referred to by the government became effective only on May 1, 1946 (TD 5512 amending § 81.17 of Regulation 105).

Subsequent to the decision of the Supreme Court in Helvering v. Hallock, 1940, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, the Commissioner of Internal Revenue took the position that the value of property transferred in trust was includable under § 811(c) in the gross estate of the decedent (except for the value of the life estates) as a transfer intended to take effect in possession or enjoyment at or after the grantor's death where the trust instrument provided that upon the death of the grantor, the principal would go to the life tenant or other named beneficiaries if she survived him, but if upon her death he survived, the property would go to the grantor. Thereafter, the decisions of the Courts were conflicting as to whether or not a reversionary inter-

---

3. See *Goldstone* v. *United States*, 1945, 325 U.S. 687, 65 S.Ct. 1323, 89 L.Ed. 1871. Cf. *Estate of Harris Fahnestock*, 1945, 4 T.C. 1096.

est required imposition of the tax under § 811(c) even though the trust instrument contained no survivorship requirement. As a result of various Court decisions, the Commissioner of Internal Revenue promulgated in 1946 the amendment to the regulation above referred to. It was this amendment to the regulation which the Commissioner relied upon in rejecting in 1952 the refund claim in the present case. But the amended regulation was not in effect at the time the tax was imposed in the instant case.

In 1949, the Supreme Court in Estate of Spiegel v. Commissioner, 335 U.S. 701, 69 S.Ct. 301, 93 L.Ed. 330, indicated that a transfer in trust came within the scope of § 811(c) unless, after the transfer had been made, the settlor was left with no present legal title to the property, no possible reversionary interest in the property, and no right to possession or enjoyment of the property then or thereafter; and the fact that monetary value of the settlor's contingent reversionary interest was small in comparison with the total value of the corpus did not render the "possession or enjoyment" provision of § 811(c) inapplicable.

It was as a result of this decision that the T.C.A. was adopted by Congress to prevent the inclusion in an estate, for purposes of taxation, of the corpus of a trust where the only "string" reserved by the settlor was an infinitesimal possibility of reverter.

When Congress, in 1949, through the T.C.A., gave relief to those taxpayers who had been required to pay heavy taxes because their decedent had owned interests in property of which he had made transfers, reserving or retaining a reversionary right of less than 5%, Congress undoubtedly intended that the relief would apply to all taxpayers who had been required to pay such taxes under § 811(c) as that section had at the time been interpreted and administered. That the tax was imposed in the present case under § 811(c) and was so imposed in accordance with the regulations and cases which were then applicable, must be undisputed. It is to those situations where the tax was so imposed that the relief of the T.C.A. is applicable. Guggenheim v. United States, 1953, 116 F.Supp. 880, 127 Ct.Cl. 121.

The position of the government seems to be that if the taxpayer in the present case had seen fit, it could have contested the tax under § 811(c) and might after long litigation have induced the Courts to reach the point which the Commissioner afterward reached of determining that no tax should be assessed under that section, unless the trust instrument provided that possession or enjoyment of the trust interests could be obtained only by beneficiaries who must survive the decedent.

However, if the taxpayer had taken such course, it might then have been met with the argument of the government, which was later sustained in Estate of Spiegel v. Commissioner, that the mere possibility of reverter was sufficient to subject the entire corpora of the trusts to the tax; and so it would have been subjected to the tax in any event.

The great uncertainty which existed in the period prior to 1949 with reference to the inclusion under § 811(c) of property transferred in trust was clarified once and for all by the T.C.A. which provided that such property should not be included "unless the decedent has retained a reversionary interest in the property, arising by the express terms of the instrument of transfer and not by operation of law, and the value of such reversionary interest immediately before the death of the decedent exceeds 5 per centum of the value of such property".

The tax was imposed under § 811(c) as it was applied and interpreted at the time of the imposition of the tax. The relief provisions of the T.C.A. were obviously designed to apply to a situation such as the present. The government, having collected the tax under § 811(c), cannot now escape the remedial effect of the T.C.A. by contending that it never should have collected the tax in the first place. See Guggenheim v. United States, supra.

The decision in Sharpless v. United States, 3 Cir., 221 F.2d 574, P–H Federal

Tax Service 1955, par. 132,859, relied on by the government, is not in point. In that case, the District Court held as a fact that the tax had been assessed pursuant to § 811(a), that is, upon the reversion belonging to the decedent after the termination of a life estate and not as a transfer intended to take effect at or after death. The Court of Appeals held that upon such a construction of the trust, the reversion was taxable under § 811(a) and that, therefore, the provisions of the T.C.A. were not applicable to this situation.

### Conclusions of Law

1. That under the provisions of § 7 of the T.C.A., the plaintiffs are not barred by the passage of time from securing a refund.

2. The corpora of the trusts to the extent that they were taxed were improperly taxed under the provisions of § 811(c) as retroactively amended by § 7 of the T.C.A.

3. The plaintiffs are entitled to a refund of taxes as sought by them.

Settle order on notice.