**HANOVER BANK and Samuel B. Fortenbaugh, Jr., Executors of Estate of William F. Wall, Deceased,**

v.

**UNITED STATES.**

No. 28–59.

United States Court of Claims.

Jan. 18, 1961.

John J. Costello, New York City, for plaintiffs.

Eugene Emerson, Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., Washington, D. C., James P. Garland and L. M. Turner, Washington, D. C., were on the brief, for defendant.

JONES, Chief Judge.

This is an action for the refund of estate taxes in the amount of $89,928.72, and interest thereon at the rate of 6 percent per annum. Plaintiffs, the Hanover Bank of New York and Samuel B. Fortenbaugh, Jr., are the executors of the estate of William F. Wall, resident of the State of New York, who died on November 1, 1942. On December 7, 1943, plaintiffs filed with the Collector of Internal Revenue, an estate tax return for the estate of William F. Wall disclosing a net taxable estate before exemption of $847,119.28 and a net estate tax payable of $221,872.40. On February 1, 1944, plaintiffs paid the Collector the latter amount.

After the filing of the return, an examination was made of the books and records of the estate of William F. Wall. On December 4, 1946, following the examination, the Commissioner of Internal Revenue issued a statutory notice of deficiency in estate tax of $145,240.85. The deficiency was attributed primarily to various adjustments in the taxable estate: (1) the inclusion in the gross taxable estate of the corpus of an *inter vivos* trust created by decedent dated August 25, 1910, valued at $240,776.43; (2) changes in the fair market value of certain assets reported in the return and the inclusion of after-discovered assets; (3) the disallowance as a deduction of the entire amount of executors' commissions; (4) the disallowance as a deduction of the entire amount of attorneys' fees claimed on the return; and (5) the disallowance of the credit for state estate taxes paid.

On March 3, 1947, plaintiffs filed a petition to the Tax Court of the United States alleging error in disallowance of the deductions for the executors' commissions, attorneys' fees and the credit for state estate taxes paid. No error was asserted with regard to the inclusion of the trust created by the decedent August 25, 1910, under the provisions of section 811(c) of the Internal Revenue Code of 1939, 26 U.S.C. § 811(c). On September 23, 1947, counsel for plaintiffs, as executors of the estate of William F. Wall, entered into a written stipulation whereby in effect the Commissioner of Internal Revenue allowed the deductions of executors' commissions and attorneys' fees and credit for state estate taxes. It was stipulated that there was a deficiency in Federal estate tax in the amount of $82,391.19. On October 6, 1947, the Tax Court entered its decision determining that there was a deficiency in Federal estate tax due from the estate. The executors of the estate, the plaintiffs herein, paid the deficiency of $82,391.19. The Tax Court's decision became final on January 4, 1948.

On October 25, 1949, there was enacted into law the Technical Changes Act of 1949, 63 Stat. 891. Section 7(a) of that Act, 63 Stat. 894, provided that property the subject of a transfer intended to take effect in possession at or after death would not be includible in the decedent's taxable estate under § 811(c) of the Internal Revenue Code of 1939, 26 U.S.C. § 811(c), unless the reversionary interest in the grantor arose by the express terms of the agreement rather than by operation of law and unless the reversionary interest had a value, immediately before the death of the decedent, of at least 5 percent of the value transferred.

The value, immediately prior to his death on November 1, 1942, of the reversionary interest of William F. Wall in the trust created by him dated August 25, 1910, was .455 percent of the value of the corpus. The plaintiffs filed with the District Director of Internal Revenue, Albany, New York, a claim for refund of $76,993.77, together with the interest assessed and paid in respect thereto in the amount of $12,934.95, both with interest as provided by law. No action was taken by the Commissioner of Internal Revenue in respect to the filing of the claims.

Plaintiffs filed their petition in this court on January 22, 1959. It was then for the first time that the Government, by way of affirmative defense, asserted that the decedent, William F. Wall, made

a series of transfers of property in contemplation of death. The defendant says that these transfers should have been, but were not, included in the value of the gross estate. The defendant's oversight is considerable in that it asserts that these transfers exceeded $240,776.-53, which is the valuation of the *inter vivos* trust created by the decedent on August 25, 1910. Defendant reasons that plaintiffs' claims for (1) $76,993.77, allegedly attributable to the inclusion of the August 25, 1910, trust in the gross taxable estate, and (2) $12,934.95, the interest paid by plaintiffs on that principal sum, a total of $89,928.72, will, in any event, be offset as a result of the deficiencies arising from the Government's admittedly erroneous failure to include in the value of the gross estate the series of transfers which it now says were made in contemplation of death.

The defendant concedes that the value of the corpus of the trust created by William F. Wall on August 25, 1910, is not includible as a part of the decedent's gross estate under § 811(c). The decision of the Tax Court which became final on January 4, 1948, would have barred any claim by the plaintiffs for refund or credit under the original terms of the Technical Changes Act of October 25, 1949. The Act of August 1, 1956, 70 Stat. 917, however, removed the bar on refund or credit of overpayment of estate tax by plaintiffs. Assuming that the plaintiffs have no further tax liability, the Technical Changes Act of 1949 entitles them to a refund. It remains for us to decide whether the defendant may urge claims before us now which would completely dissipate the refund the plaintiffs would otherwise be entitled to. The prime matter for consideration therefore in determining plaintiffs' motion for summary judgment is whether the defendant can litigate its affirmative defense in this lawsuit.

We must decide whether it is permissible, 18 years after the death of this decedent, for the defendant in this suit to assert claims on transfers allegedly made in contemplation of death. There are two obstacles which defendant must surmount in respect to this question. The plaintiffs contend that § 7(c) of the Technical Changes Act, 63 Stat. 891, 896, 26 U.S.C. § 811 note, serves to release them from the operation of any rule of law which would tend to defeat their valid claim. Therefore plaintiffs assert that no setoff attributable to previously untaxed transfers can be allowed to diminish the recovery the Act would otherwise effect for them.

Besides the obstacle of § 7(c), the plaintiffs contend that defendant's theory cannot succeed because of the doctrine of res judicata. The plaintiffs say that this precise issue, the estate tax liability of decedent William F. Wall, was presented to the Tax Court by these same parties. Therefore, it is argued, neither of these parties is free to raise here an aspect of the very question which was adjudicated there.

We turn first to assay the effect of § 7(c) of the Technical Changes Act of 1949 on defendant's case. Section 7 (c) of the Technical Changes Act of 1949, 63 Stat. 891, 896, provides in material part:

> "*If refund or credit of any overpayment resulting from the application* of subsections (a) and (b) *is prevented* on the date of the enactment of this Act, or within one year from such date, *by the operation of any law or rule of law* \* \* \*, *refund or credit of such overpayment may, nevertheless, be made or allowed* if claim therefor is filed within one year from the date of the enactment of this Act."
> [Emphasis supplied.]

It is undoubtedly true that in a suit for refund the Commissioner may counterclaim when a like or greater amount is owed the Government even though the statute of limitations would prevent the Commissioner from suing for such amount in an independent action. While this is true as a general proposition, we think the precise language of § 7(c)

serves to direct a different result here. The plaintiffs say that setoff is just such a "rule of law" as § 7(c) intended to remove as a barrier to recovery under § 7(a). A case much in point on this issue is Bank of New York v. United States, D.C.S.D.N.Y.1956, 141 F.Supp. 364. In that case the executors had made an offer of compromise limiting the tax liability of the estate. Subsequently, the executors found themselves within the relief provisions of § 7 of the Technical Changes Act of 1949. When suit was brought pursuant to § 7, the Government argued that plaintiffs' action with regard to compromising their claim served to preclude their suit because of the doctrine of equitable estoppel. The district court said—and on this the defendant relies—the following on page 367:

"As to the second defense, whether or not the facts of this case give rise to the doctrine of equitable estoppel is a somewhat more difficult question. The Supreme Court expressly left the matter open in the Botany Mills case [Botany Worsted Mills v. U. S., 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379]. The answer should probably be in the negative since the government may always assert a deficiency by way of recoupment when sued for a refund, even though an independent suit for the amount of the deficiency would be barred by the statute of limitations. [citations omitted] The mere fact that the government has not chosen to bring an action for recoupment in this suit should not prejudice the taxpayers in their claim for a refund."

The defendant's reliance on this passage is unjustified. The court *continued* its discussion in Bank of New York to point out that the language of § 7 served to remove speculation as to whether a "rule of law" could bar a refund thereunder. The court said at page 368:

"However, we need not decide the matter since § 7(c) of the Technical Changes Act of 1949, 63 Stat. 896,

26 U.S.C.A. § 811 note, makes it clear that no law or rule of law *(and that would include the doctrine of equitable estoppel)* \* \* \* bars the refund. This leaves little doubt that Congress intended to afford the broadest relief to the taxpayer." [Emphasis supplied.]

Prior decisions of this court are completely consistent with a liberal interpretation of § 7 such as was accorded that section in Bank of New York. Pyne v. United States, Ct.Cl., 169 F. Supp. 811; Guggenheim v. United States, 1953, 116 F.Supp. 880, 883, 127 Ct.Cl. 121. In Guggenheim this court said in 116 F.Supp. at page 883, 127 Ct. Cl. at page 126:

"When Congress, in 1949, set out to give relief to those taxpayers who had been required to pay heavy taxes upon relatively worthless assets, because their decedents owned interests in property of which they had made transfers 'intended to take effect in possession at or after (the grantor's) death,' we think it intended that relief for all taxpayers who had been required to pay such taxes under Section 811(c) as interpreted and administered. *The principle that a relief statute should be liberally interpreted to reach the evil that it was intended to cure is directly applicable.*" [Emphasis supplied.]

We think it clear that the words "any rule of law" are to be construed in a manner which will yield a large measure of protection to the taxpayer who claims a refund under § 7(a). Recoupment or setoff is no less a rule of law than equitable estoppel. As equitable estoppel could not be asserted by the Government in Bank of New York because of § 7(c), so similarly the Government cannot assert a theory of recoupment in this case due to the prohibition of that provision.

We turn next to an analysis of plaintiffs' contention that the defendant's claim by way of affirmative defense

of an estate tax deficiency is barred by the doctrine of res judicata as a result of the Tax Court judgment. It should be observed at the outset that the fact that the Tax Court judgment was entered pursuant to the stipulation of the parties can in no way limit the operation of the doctrine of res judicata if it otherwise applies. United States v. International Building Co., 1952, 345 U.S. 502, 506, 73 S.Ct. 807, 97 L.Ed. 1182; Maher v. United States, 172 F.Supp. 689, 145 Ct. Cl. —. The plaintiffs say that the Tax Court judgment was a final adjudication except to the extent that the law on which the judgment against them was rendered has been altered by the Technical Changes Act of 1949. Therefore, the plaintiffs contend that the defendant cannot reopen the Tax Court judgment by way of affirmative defense in this lawsuit to assert a new theory of liability which it could have advanced in the Tax Court.

The defendant contends that the doctrine of res judicata is not involved here. The defendant concedes that this suit is between the same parties who were before the Tax Court. But the defendant says that this suit is for another and distinctly different cause of action, i. e., the plaintiffs' rights under the Technical Changes Act of 1949. We cannot accept this interpretation. If we were to accept defendant's position we would have to say that the remedial legislation which occasioned this suit can operate in this instance to permit the Government to set aside the doctrine of res judicata. We reject any such assertion. We believe that our previous interpretations of § 7(a) of the Technical Changes Act of 1949 require adherence to the doctrine of res judicata in this situation. Indeed, in Guggenheim v. United States, 1953, 116 F.Supp. 880, 127 Ct.Cl. 121, where the bar of res judicata was absent, we nonetheless expressed our distaste toward permitting the Government to use suits occasioned by § 7(a) as an opportunity to raise or reargue other questions of tax liability.

This court said in Guggenheim 116 F. Supp. at page 884, 127 Ct.Cl. at page 126:

"We think Congress, in 1949, had no idea of limiting its relief so narrowly, and so indefinitely, that all of this old straw would have to be threshed to find the kernel of relief."

■■ Moreover, defendant's affirmative defense is grounded on the estate tax liability of the decedent. That is the cause of action upon which judgment was rendered by the Tax Court and that is exactly the cause of action which defendant seeks to put in issue once again by way of affirmative defense in this suit. The defendant claims there is a deficiency in the plaintiffs' estate tax. Defendant rests this claim for deficiency on allegations that a series of transfers were made in contemplation of death by the decedent which transfers were untaxed. But the defendant could have made this claim before the Tax Court. We think the defendant is foreclosed from raising it in this court. The doctrine of res judicata operates as a bar to the relitigation of all issues which were raised in a previous suit or which might properly have been raised. Commissioner of Internal Revenue v. Sunnen, 1948, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898.

On this threshold issue, whether defendant's claim for deficiency on a theory not advanced before the Tax Court can be raised in this suit, the defendant has been forced to navigate its case through rather choppy waters. It has been rather in the position of Ulysses of old. Even if the Scylla of § 7(c) could have been avoided, defendant still had to pilot his case so as to avert the equally fatal Charybdis of res judicata. Defendant has not been able to do either.

There is a final issue for our consideration. The plaintiffs say they are entitled to interest on the refund that § 7(a) makes available to them. Plaintiffs contend that 63 Stat. 106, 28 U.S.C.

§ 2411(a) (1952) [1] and 53 Stat. 465, 26 U.S.C. § 3771 (1952) [2] of the Internal Revenue Code of 1939 provides for the allowance of 6 percent interest on tax overpayments. The effect of § 7(a) of the Technical Changes Act of 1949 serves to put the plaintiffs in a situation where they have overpaid their tax. The question for decision is whether the sections referred to above can aid the plaintiffs in view of the specific limitation of § 7(b) of the Technical Changes Act, 63 Stat. 896, 26 U.S.C. § 811 note, which provides:

> " * * * No interest shall be allowed or paid on any overpayment resulting from the application of subsection (a) with respect to any payment made prior to the date of the enactment of this Act."

The plaintiffs predicate their claim for interest on two cases: Carter v. Liquid Carbonic Pacific Corp., 9 Cir., 1938, 97 F.2d 1; General Motors Corp., Frigidaire Division v. United States, 1956, 146 F.Supp. 220, 142 Ct.Cl. 890. In both of those cases, however, the statutory restriction on the payment of interest was less inclusive than that of § 7(b). The Carter case was a suit by a taxpayer for refund of a wrongful

assessment by the Government of excise taxes. The specific statutory provision in Carter on which the taxpayer founded his claim for refund contained a provision that "in no case shall interest be allowed with respect to any amount of tax under this title credited or refunded."[3] The Court of Appeals for the Ninth Circuit indicated that the provision did not apply when a claim for refund was rejected by the Commissioner and suit had to be brought to obtain it.

In General Motors Corp., Frigidaire Division v. United States, 1956, 146 F. Supp. 220, 142 Ct.Cl. 890,[4] this court granted a refund to a taxpayer pursuant to 26 U.S.C. § 3443(a) (2), 53 Stat. 417. Subsection (c) of that provision provided that "no interest shall be allowed with respect to any amount of tax credited or refunded under the provisions of subsection (a) hereof."[5] We held that the plaintiff was entitled to interest pursuant to § 2411(a). Relying upon the Carter case, we said that the statutory phrase "credited or refunded" referred to administrative refunds. We held that the prohibition as to interest of § 3443(c) did not apply to a refund obtained by a judicial determination.

1. Section 2411 provides:
"(a) In any judgment of any court rendered (whether against the United States, a collector or deputy collector of internal revenue, a former collector or deputy collector, or the personal representative in case of death) for any overpayment in respect of any internal-revenue tax, interest shall be allowed at the rate of 6 per centum per annum upon the amount of the overpayment, from the date of the payment or collection thereof to a date preceding the date of the refund check by not more than thirty days, such date to be determined by the Commissioner of Internal Revenue. * * * *"

2. Section 3771 provides:
"Interest on Overpayments.
"(a) Rate.—Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the rate of 6 per centum per annum.
"(b) Period.—Such interest shall be allowed and paid as follows:

* * * * *
"(2) Refunds.—In the case of a refund, from the date of the overpayment to a date preceding the date of the refund check by not more than thirty days, such date to be determined by the Commissioner, whether or not such refund check is accepted by the taxpayer after tender of such check to the taxpayer. The acceptance of such check shall be without prejudice to any right of the taxpayer to claim any additional overpayment and interest thereon."

3. Revenue Act of 1932, 47 Stat. 268 cited in Carter v. Liquid Carbonic Pacific Corp., 9 Cir., 1938, 97 F.2d 1, 5.

4. This opinion was vacated by order of the court on March 6, 1957. See 146 F.Supp. 220, 142 Ct.Cl. 893.

5. Internal Revenue Code of 1939, 53 Stat. 417, cited in General Motors Corp., Frigidaire Division v. United States, 1956, 146 F.Supp. 220, 142 Ct.Cl. 890, 892.

We do not believe that the language of § 7(b), which forbids interest on "any overpayment," is susceptible to the creation of a distinction which would make the payment of interest dependent on whether the refund for overpayment was granted administratively or obtained by way of judgment. In a case involving § 7(b), In re Estate of Cardeza (Fidelity-Philadelphia Trust Co. v. United States), 1958, 261 F.2d 423, the United States Court of Appeals for the Third Circuit interpreted this language precisely as it was written and held that on a recovery pursuant to § 7(a) of the Technical Changes Act of 1949 the taxpayer was not entitled to interest.[6] The Court of Appeals for the Third Circuit said at page 428:

> "Although it is Section 7(a) under which taxpayer seeks to obtain its refund, it contends that Section 7(b) was merely intended to restrict the right to interest on refunds *allowed* by the Commissioner of Internal Revenue and not to prohibit interest on judgments obtained following denials of refunds. The short answer to taxpayer's contention is to be found in Section 7(b) itself, for no limitation upon the clear, all-inclusive language is contained therein."

We agree with the view of the Court of Appeals for the Third Circuit in In re Estate of Cardeza (Fidelity-Philadelphia Trust Co. v. United States), supra, with respect to the question of interest. We think § 7(b) is conclusive as to the point that no interest can be awarded on a refund authorized by § 7(a).

In conclusion, we hold that the plaintiffs as executors of the Estate of William F. Wall, deceased, are entitled to a refund of the estate taxes assessed against them in the amount of $76,993.-77, and the interest which they paid on that principal amount, $12,934.95, a total

of $89,928.72. They are not entitled, however, to any interest on this total. Plaintiffs' motion for summary judgment is therefore granted in part and denied in part.

Judgment for the plaintiffs will be entered in the sum of $89,928.72.

It is so ordered.

DURFEE, LARAMORE, and MADDEN, Judges, concur.

WHITAKER, Judge (concurring).

I agree that defendant is barred by the rule of *res judicata* from now asserting its contention that plaintiffs did not include within the gross estate of the decedent certain transfers alleged to have been made in contemplation of death; but I have grave doubt about the assertion that § 7(c) of the Technical Changes Act of 1949 prevents it from doing so.

---

6. We note that in Cardeza the taxpayer sought to base its claim for interest on the same two cases on which the taxpayer relies here: Carter v. Liquid Carbonic Pacific Corp., 9 Cir., 1938, 97 F.2d 1; General Motors Corp., Frigidaire Division v. United States, 1956, 146 F. Supp. 220, 142 Ct.Cl. 890. That court found them inapplicable, as we do.