NORMAN H. HANSON, DECEASED, RUBY F. HANSON, SURVIVING SPOUSE, AND RUBY F. HANSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hanson v. Commissioner
Docket No. 12300-90
United States Tax Court
T.C. Memo 1991-581; 1991 Tax Ct. Memo LEXIS 629; 62 T.C.M. (CCH) 1316; T.C.M. (RIA) 91581; November 26, 1991, Filed *629 Decision will be entered for the respondent. Barry Becker, for the petitioners. Stephen S. Ash, for the respondent. COHEN, Judge. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 61,623 in petitioners' Federal income tax for 1986. The issues for decision are: (1) Whether respondent's determination of a $ 1 per share basis in the stock of petitioners' corporation should be sustained, (2) whether petitioners may revoke their election out of the installment method of reporting their capital gain for 1986, and (3) whether petitioners are entitled to a bad debt deduction of $ 75,000. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Phoenix, Arizona, at the time they filed their petition in this case. Petitioners were shareholders of the corporation Hanson's, Inc. (Hanson's). Mr. Hanson owned 46.80 percent of the common *630 stock of Hanson's, or 382,400 shares. Mrs. Hanson owned 3.63 percent of the common stock of Hanson's, or 29,650 shares. The stock was issued with a par value of $ 1 per share. Mr. Hanson was president of Hanson's in 1975. Mr. Hanson signed a check to be drawn on an account of petitioners at the Valley National Bank, dated July 18, 1975, for $ 75,000 to be paid to the order of Hanson's (the advance). Mr. Hanson, as president of Hanson's, signed a promissory note for $ 75,000, dated July 18, 1975, in favor of petitioners (the promissory note). Petitioners also signed a demand, dated June 15, 1978, upon Hanson's for repayment of the promissory note. In 1983, petitioners filed a petition seeking a redetermination of their tax liability for 1979 (the 1979 case). In a letter, an Internal Revenue Service Appeals Officer requested petitioners' assent to a proposed stipulated decision in the 1979 case. That letter included a revised Schedule D to petitioners' 1979 Federal income tax return, which showed a "cost or other basis" of $ 75,297, or $ 1.93 per share, in 39,100 shares of stock of Hanson's that was sold in 1979. Petitioners signed the stipulated decision document. The decision *631 was entered on December 24, 1984. As a result of a judgment against Hanson's and petitioners, the stock of Hanson's became worthless in 1984. On their 1984 Federal income tax return, petitioners claimed a long-term capital loss due to the worthlessness of their 372,950 shares of stock of Hanson's. They reported no receipts in connection with the stock and claimed a cost basis of $ 536,240, or $ 1.44 per share. On their 1986 Federal income tax return, petitioners deducted $ 329,211 as a long-term capital loss carryover from prior years. Respondent determined that petitioners' basis in the stock was $ 372,950, or $ 1 per share. On December 22, 1986, petitioners acquired 4.052 acres of land for $ 765,273. Petitioners sold the land for $ 1,150,000 on December 31, 1986, resulting in a short-term gain of $ 384,727 (the sale). Because they believed they had a loss carryover from 1984 sufficient to offset the gain on the sale, petitioners elected to report the total gain realized from the sale on their 1986 Federal income tax return, as permitted by section 453(d). OPINION The Basis in the Stock
Petitioners bear the burden of proving that respondent's determinations are erroneous. *632 Rule 142(a). Petitioners, in their brief, admit that they have no independent evidence to support their determination of a $ 1.44 per share basis in the stock of Hanson's. They argue that respondent should be collaterally estopped to deny the basis calculated by respondent in the 1979 case. Petitioners rely on Russell v. Commissioner, 678 F.2d 782 (9th Cir. 1982); Commissioner v. John Danz Charitable Trust, 284 F.2d 726 (9th Cir. 1960); Erickson v. United States, 159 Ct. Cl. 202, 309 F.2d 760 (1962); and Hanover Bank v. United States, 152 Ct. Cl. 391, 285 F.2d 455 (1961), for the proposition that the doctrine of collateral estoppel applies to judgments of this Court. They err, however, in claiming that this doctrine is not limited when the prior decision was based on a stipulation of the parties. For collateral estoppel to apply, the issue in question must have been "actually and necessarily determined by a court of competent jurisdiction." Montana v. United States, 440 U.S. 147, 153, 59 L. Ed. 2d 210, 99 S. Ct. 970 (1979). A decision entered by this Court based on a stipulation by the *633 parties constitutes "only a pro forma acceptance * * * of an agreement between the parties." United States v. International Bldg. Co., 345 U.S. 502, 505, 97 L. Ed. 1182, 73 S. Ct. 807 (1953). Absent evidence that a stipulated decision was based on an inquiry into the merits of the case by the Court, the decision can have no collateral estoppel effect in subsequent cases. United States v. International Bldg. Co., 345 U.S. at 506. No such evidence has been presented in this case. Therefore, collateral estoppel does not apply. Petitioners have not met their burden of proof. Respondent's determination of a $ 1 per share basis in the stock of Hanson's is therefore sustained. The Installment Sale
Petitioners elected out of the installment method of reporting gain on the sale because they believed they had a capital loss carryover from 1984 sufficient to offset their gain in 1986. Because the loss carryover has been reduced, petitioners seek to revoke their election out of the installment method. Once a taxpayer has elected a valid method of reporting income from a transaction, the election is binding upon the taxpayer and the Commissioner. Pacific National Co. v. Welch, 304 U.S. 191, 194-195, 82 L. Ed. 1282, 58 S. Ct. 857 (1938). *634 Taxpayers have been permitted to change their methods of reporting income only when the original method used for reporting income was impermissible. Wierschem v. Commissioner, 82 T.C. 718, 723 (1984). Once a taxpayer has elected a valid method of reporting income, he may not use hindsight to correct an unfortunate choice of reporting. Petitioners claim that, in calculating their capital loss for 1984, they relied on respondent's calculation of basis in the stock of Hanson's in the 1979 case. They argue that, based on the doctrine of equitable estoppel, they should be permitted to revoke their election out of the installment method of reporting income from the sale. We cannot conclude that petitioners actually relied on the figures presented in the revised Schedule D in the 1979 case. They offered no evidence other than the testimony of Douglas A. Hanson, petitioners' son, to prove that they relied on respondent's earlier calculations. If petitioners had relied on respondent's earlier calculations, they should have used a basis of $ 1.93 per share in calculating their loss in 1984, rather than a basis of $ 1.44 per share. Even if petitioners did so rely, *635 their claim nevertheless fails. In addition to the traditional elements of equitable estoppel, an estoppel against the Government requires that there have been "affirmative misconduct going beyond mere negligence." Morgan v. Heckler, 779 F.2d 544, 545 (9th Cir. 1985). No misconduct by the Appeals Officer has been proved, nor did the Government try to induce reliance by petitioners on its calculations in the 1979 case. Therefore, equitable estoppel does not apply. Petitioners are bound by their election out of the installment method on their 1986 Federal income tax return. The Bad Debt
Petitioners claim a bad debt deduction of $ 75,000 for 1984. They claim that the advance represented a loan to Hanson's, which became a bad debt in the same year as the stock of Hanson's became worthless. Respondent expresses doubts as to whether there was a transfer of funds from petitioners to Hanson's. Petitioners produced no evidence that would indicate the advance was deposited by Hanson's. Assuming that $ 75,000 was transferred, respondent contends that the evidence does not establish that a loan, rather than a contribution to capital, was made. The determination *636 of whether an advance from a stockholder to a closely held corporation is a loan or a capital contribution depends on whether a true debtor-creditor relationship was created. Wilshire & West. Sandwiches v. Commissioner, 175 F.2d 718, 720 (9th Cir. 1949). It is to be decided based on all of the surrounding facts and circumstances. Litton Business Systems, Inc. v. Commissioner, 61 T.C. 367, 376 (1973). The Court of Appeals for the Ninth Circuit has identified factors to be considered in reaching this decision: (1) the names given to the certificates evidencing the indebtedness; (2) the presence or absence of a maturity date; (3) the source of the payments; (4) the right to enforce the payment of principal and interest; (5) participation and management; (6) a status equal to or inferior to that of regular corporate creditors; (7) the intent of the parties; (8) "thin" or adequate capitalization; (9) identity of interest between creditor and stock holder; (10) payment of interest only out of "dividend" money; (11) the ability of the corporation to obtain loans from outside lending institutions.
A.R. Lantz Co. v. United States, 424 F.2d 1330, 1333 (9th Cir. 1970) *637 (quoting O.H. Kruse Grain & Milling v. Commissioner, 279 F.2d 123, 125-126 (9th Cir. 1960), affg. a Memorandum Opinion of this Court). "The identified factors are not equally significant nor is any single factor determinative. Moreover, * * * all of the factors are not relevant to each case." Dixie Dairies Corp. v. Commissioner, 74 T.C. 476, 493-494 (1980). (Citations omitted.) Petitioners offered a promissory note in favor of petitioners, signed by Mr. Hanson in his capacity as president of Hanson's, and a document purporting to show that the advance was carried as a loan on the books of the corporation. Objective expressions of intent, such as these, are not controlling. A.R. Lantz Co. v. Commissioner, 424 F.2d at 1333. Petitioners also offered a demand for repayment, dated June 15, 1978, signed by petitioners. When the purported loan was not repaid, petitioners took no action. The only other evidence presented regarding the treatment of the advance as a loan was the testimony of Douglas A. Hanson, petitioners' son. His testimony is unpersuasive. When asked on cross-examination about the promissory note, Douglas *638 A. Hanson admitted that it contained no fixed maturity date. He also stated that the interest and principal of the purported loan were supposed to have been paid from the ongoing operations of Hanson's. Both of these factors suggest that the advance was a capital contribution rather than a loan. Petitioners presented no evidence regarding the other factors upon which the decision is to be based. Furthermore, the bad debt deduction was not claimed in 1984, the year in which the 372,950 shares in Hanson's were declared worthless. Petitioners' failure to make the claim earlier is unexplained and casts doubt on its present validity. All facts concerning the advance were presumably known to them in 1984. Based on the foregoing, we conclude that petitioners have failed to prove that the $ 75,000 advance from petitioners to Hanson's in 1975 was a loan and not a contribution to capital. Petitioners are not entitled to a bad debt deduction. Decision will be entered for the respondent.