Oliver A. GOTTSCHALK, Appellant,

v.

**SOUTH DAKOTA STATE REAL ES-
TATE COMMISSION, Respondent.**

No. 12065.

Supreme Court of South Dakota.

April 12, 1978.

Lewayne M. Erickson, Brookings, for appellant.

William J. Srstka, Jr. of Duncan, Olinger & Srstka, Pierre, for respondent.

ZASTROW, Justice.

The appellant, Oliver Gottschalk (Gottschalk), a licensed real estate broker, was charged with unprofessional conduct, and a hearing on those allegations was held before the South Dakota Real Estate Commission (Commission) on September 4, 1975. The Commission entered its findings of fact and conclusions of law and decision and order on September 11, 1975, finding Gottschalk guilty of unprofessional conduct and revoking his South Dakota real estate license.

Gottschalk appealed the Commission's order to the circuit court under the Adminis-trative Procedures Act, SDCL, Ch. 1–26. The circuit court upheld the Commission's decision. The appellant seeks review of the circuit court's decision. We affirm.

## FACTS

A disciplinary action had been brought against Gottschalk following a complaint by H. O. Lund of Brookings. The hearing on that complaint, held on February 5 and April 29, 1971, involved the sale of Lund's home by Gottschalk on December 15, 1970. Lund had received a check from the Gottschalk trust account which was dishon-ored upon presentation to the bank. During the course of that hearing, evidence was produced which showed forty-nine over-drafts on Gottschalk's trust account between January 1, 1970 and December 30, 1970. Based upon the findings, Gottsch-alk's license was suspended for six months, beginning May 6, 1971.

The complaint which led to the present revocation involves the purchase of a home by Mrs. Thelma Nelson in 1969. After the death of her husband, Mrs. Nelson decided to move to Brookings. After Gottschalk had shown her several homes, she signed a purchase agreement on June 28, 1969. She made a down payment of $1,500, but advised Gottschalk that it was her desire to use the proceeds of her husband's life insur-ance to pay the full purchase price of the house and not to assume the mortgage. The transaction was closed on August 15, 1969, and Mrs. Nelson delivered a check for $17,042.57 to Gottschalk.

Several months later, she received a notice of delinquent mortgage payments from Prudential Insurance Company. When Mrs. Nelson discussed the matter with Gottschalk, he assured her that Prudential had made some mistake. Later, she received a similar notice and similar assur-ances from Gottschalk. In August of 1971, a representative of Prudential visited Mrs. Nelson and advised her she was five months behind in her house payments. Mrs. Nelson advised the representative that she had paid cash for the home. When the Pruden-tial representative confronted Gottschalk,

he admitted that he had been in financial difficulties and had used the money to pay personal debts. Gottschalk explained that he had attempted to cover up the conversion by making monthly payments until his financial situation made it impossible.

A complaint was made to the Commission by the Prudential representative. The disciplinary proceedings were initiated in November 1971; however, due to the appellant's institution of various court challenges,[1] the hearing was delayed until September 1975.

## ISSUES

The appellant raises three issues in his appeal: (1) Is the pending action barred by the doctrine of res judicata; (2) Did the prior knowledge and pecuniary interest of the members of the Commission deny appellant due process of law; and (3) Did the combination of the functions of Commission members deny the appellant due process of law.

## RES JUDICATA

■ The question of the applicability of the doctrine of res judicata in an administrative hearing is one of first impression in this state. Most modern authorities have applied the doctrine to contested administrative proceedings. Davis, Administrative Law (5th Ed., 1973, 1976 Supp.), Ch. 21. It appears that the rationale for the doctrine of res judicata is equally applicable to contested administrative hearings as it is to judicial proceedings. The United States Supreme Court has adopted a similar posture in *United States v. Utah Constr. & Min. Co.,* 1966, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642, wherein it is stated:

"When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose. *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263; *Hanover Bank v. United States,* 285 F.2d 455, 152 Ct.Cl. 391; *Fairmont Aluminum Co. v. Commissioner of Internal Revenue,* 222 F.2d 622 [4 Cir.]; *Seatrain Lines, Inc. v. Pennsylvania R. Co.,* 207 F.2d 255 [3 Cir]. See also *Goldstein v. Doft,* 236 F.Supp. 730 [D.C.], aff'd 353 F.2d 484 [2 Cir.], cert. den., 383 U.S. 960, 86 S.Ct. 1226, 16 L.Ed.2d 302, where collateral estoppel was applied to prevent relitigation of factual disputes resolved by an arbitrator.

"In the present case the Board was acting in a judicial capacity when it considered the * * * claims, the factual disputes resolved were clearly relevant to issues properly before it, and both parties had a full and fair opportunity to argue their version of the facts and an opportunity to seek court review of any adverse findings. There is, therefore, neither need nor justification, for a second evidentiary hearing on these matters already resolved as between these two parties."

See also 2 Am.Jur.2d, Administrative Law, § 496, et seq.

The doctrine of res judicata as applied to court judgments has been defined by this court.

"First, a final judgment or decree of a court of competent jurisdiction upon the merits is a bar to any future action between the same parties or their privies upon the same cause of action so long as it remains unreversed; and, second, a point which was actually and directly in issue in a former action and was there judicially passed upon and determined by a domestic court of competent jurisdiction cannot be drawn in question in any future action between the same parties or their privies whether the cause of action in the two actions be identical or different. * * * Under the first rule the res which is judicata is the cause of action. Under the second, the res which may be judicata is the particular issue or fact common to both actions." *Keith v. Willers Truck Service,* 1936, 64 S.D. 274 at 276, 266 N.W. 256 at 257–258.

1. See *Gottschalk v. Hegg,* 1975, S.D., 228 N.W.2d 640.

This court further explained the two principles of res judicata in *Golden v. Oahe Enterprises, Inc.,* 1976, S.D., 240 N.W.2d 102:

> "For purposes of res judicata, a cause of action is comprised of the facts which establish the right a party seeks to enforce through litigation. * * * A test employed by the Eighth Circuit Court of Appeals for the determination of whether a cause of action is the same for purposes of applying the res judicata doctrine is ' "whether the wrong for which redress is sought is the same for both actions." ' * * * A judgment which bars a second action upon the same claim extends not only to every matter offered and received to sustain or defeat the claim or demand but also to all other admissible matters which might have been offered for the same purpose. * * If, however, the second action is based upon a different claim or demand, the prior judgment precludes further consideration only of those issues which were actually litigated and determined. * * "

The second principle of res judicata described in the *Keith v. Willers Truck Service,* supra, and *Golden v. Oahe Enterprises, Inc.,* supra, cases is quite often identified as "collateral estoppel." See 37 Words and Phrases, Res Judicata, 1978 Supp., pp. 121–122; 7A Words and Phrases, Collateral Estoppel, pp. 212–213.

The appellant desires to apply "res judicata" since that doctrine would bar. any issue which could have been litigated to sustain the claim of misuse of funds. However, a review of the facts and proceedings in the hearings leads to the conclusion that this is an issue of "collateral estoppel," not "res judicata." See Davis, Administrative Law Treatise (1958 Ed.) § 1804.

The "claim" in the 1971 proceeding involved the "misuse of trust funds" in the Northwestern National Bank trust account. Based upon the evidence presented, the Commission found that Gottschalk had is-

sued forty-nine trust account checks which resulted in overdrafts; that he had failed to maintain complete and adequate records which rendered it impossible to verify the source and use of trust account funds. The Commission also found that Gottschalk had failed to properly deposit and remit trust monies paid to him, and that he had withdrawn trust funds before the closing of a transaction, thereby using trust funds for uses other than the specific transaction which was their source. The Commission did not find any conversion of funds. This is supported by the testimony of the three clients of appellant called by the Commission. Each testified that trust account checks issued to them had been returned for insufficient funds, but in each instance, the check had been honored within a matter of hours or days.

The "claim" in the 1975 proceeding involved Gottschalk's admitted "conversion for personal use" of $17,000 paid by Mrs. Nelson in 1969. Those funds had been deposited in a second trust account maintained by Gottschalk at the First National Bank. This second trust account was unknown to the Commission until its existence was mentioned by Gottschalk's attorney as an explanation for the source of some deposits to the Northwestern trust account. A subsequent audit of the First National trust account for the year 1970 [2] had shown only seven deposits and no overdrafts. Although it was also characterized by insufficient records, there was no evidence of irregularity in the use of that account during 1970.

Because the hearings involve different claims of unprofessional conduct, i. e., misuse of funds, vis-a-vis conversion of funds, the doctrine of res judicata was not applicable to the issues in these proceedings.

## COLLATERAL ESTOPPEL

While res judicata prevents the relitigation of an issue of ultimate fact actually litigated or which could have been

---

2. The audit of the First National trust account had been restricted to 1970 because of Gottsch-

alk's objection to any review of prior years where there had been no complaints.

properly raised and determined therein, collateral estoppel only prevents the relitigation of issues *actually litigated and determined* in the prior proceeding. 46 Am. Jur.2d, Judgments, §§ 416–418; 50 C.J.S. Judgments §§ 712–736. The issue of Gottschalk's conversion of Mrs. Nelson's funds to his own use was not actually litigated nor determined at the previous hearing.

Gottschalk argues that both hearings were "broad investigative procedure(s) pertaining to the misuse of trust funds," the inference being that the Commission could have discovered the conversion had it been more thorough. However, the test is not what could have been discovered and litigated but what actually was. Had the Nelson transaction complaint been made and investigated before the first hearing, the appellant's position would have been stronger. Furthermore, the condition of Gottschalk's records was such that evidence of the conversion to personal use was impossible by an audit alone. It is also quite apparent from the record that Gottschalk wanted the Commission's first investigation restricted to 1970, the year in which the original complaints had been made. It is inconsistent for the appellant to ask the Commission to restrict the first hearing to 1970 and now complain that the Commission should have reviewed all previous transactions for possible misconduct.

The second hearing dealt with a specific instance of Gottschalk's conversion of a client's funds. The fact that the funds passed through his trust account was of collateral importance. Because there was no evidence of conversion of Mrs. Nelson's funds by Gottschalk in the first hearing, the Commission was not estopped from litigating that issue. See *Taylor v. England,* 1965, D.C.App., 213 A.2d 821.

## PECUNIARY INTEREST

The appellant argues that Loren Stein, a member of the Commission, had a substantial pecuniary interest in the proceedings because he was in direct competition with Gottschalk in the real estate business in Watertown. The only factual evidence on the issue comes from a stipulation between Gottschalk and the Commission, to-wit:

"* * * LOREN STEIN is a licensed real estate broker in South Dakota whose principal place of business is Watertown, South Dakota; that OLIVER A. GOTTSCHALK has been engaged as a real estate broker for several years with principal offices at Brookings, South Dakota, and associated as a partner with his brother in the same business with offices in Watertown, South Dakota; that the aforesaid OLIVER A. GOTTSCHALK opened a separate office in Watertown, South Dakota on January 17, 1975; and LOREN STEIN, who became a member of the Commission on July 1, 1973, is in direct competition with OLIVER A. GOTTSCHALK."

The appellant also alleges a pecuniary interest in Commissioner Hegg and relies on the following stipulation:

"That on December 9, 1971, and February 3, 1972, PETER HEGG of the real estate firm with which he was associated in Sioux Falls, had real estate listings in the Brookings area. PETER HEGG, or the firm with which he was associated with in Sioux Falls, also occasionally advertised in the Brookings area."

This court has expressed its concern that the members passing judgment in these administrative hearings be disinterested and free from any form of bias or predisposition regarding the outcome of the proceedings. *Mordhorst v. Egert,* 1974, S.D., 223 N.W.2d 501. This court has recognized that professional board members with a *substantial* pecuniary interest should not adjudicate the kind of dispute involved in these proceedings. *Apoian v. State,* 1975, S.D., 235 N.W.2d 641. However, absent a showing of substantial pecuniary interest by the appellant, this court will presume that the Real Estate Commission members acted fairly and impartially. The stipulation by the parties indicates a lack of any direct competition between Commissioner Hegg and the appellant which would show a substantial pecuniary interest.

The operation of a partnership of Gottschalk and his brother in Commissioner Stein's hometown is of great concern. However, the appellant's main office and principal place of business was in Brookings. Gottschalk refused the opportunity to show that he received any substantial income from the Watertown partnership. He also refused to cross-examine Stein about his possible bias and interest. The stipulation of direct competition alone does not establish a substantial pecuniary interest sufficient to disqualify Commissioner Stein.

Certainly, Gottschalk's mere establishment of a branch office in the same town after the proceedings were begun in 1971 is insufficient to show bias and prejudice. A contrary holding would allow a broker to disqualify all members of the Commission simply by opening a branch office in each member's hometown after disciplinary proceedings are instituted. See *Brown v. State Board of Optometry,* S.D., 1978, 263 N.W.2d 490. Without a stronger showing, we find no substantial pecuniary interest of the Commission members which would deprive the appellant of due process.

## COMBINED FUNCTIONS

The appellant contends that in these proceedings the Commission has been actively involved in the initiation, investigation, prosecution, judgment and disciplinary action. He complains that the combination of all of these functions in a single commission violates his right to a fair hearing before a fair tribunal required by due process. *In Re Murchison,* 1955, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942; *Gibson v. Berryhill,* 1973, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488.

However, the United States Supreme Court has indicated that the mere combination of functions is not a per se constitutional violation.

"The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. They must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under realistic appraisal of psychological tendencies in human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

"Very similar claims have been squarely rejected in prior decisions of this Court. * * *" *Withrow v. Larkin,* 1975, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712.

See also 1 Am.Jur.2d, Administrative Law, § 78.

The only showing made by the appellant again is found in the stipulation between the parties, to-wit:

"That at its regular meeting on December 9, 1971, the South Dakota State Real Estate Commission took under consideration a reported problem in the THELMA NELSON, Buyer—CALVIN E. SEVERSON, Seller transaction which reportedly occurred in 1969 and by motion duly made and seconded, Mr. BURCHILL, Secretary to the Real Estate Commission, was 'instructed to go to Brookings and meet with Mrs. NELSON and her attorney, Mr. McCANN and that the Commission issue an Order for an Emergency Hearing setting the date . . .' and place.

"That there was no formal Complaint by Mrs. NELSON, her attorney, Mr. SEVERSON or any other person other than the action of the Commission described III above.

"That thereafter Mr. BURCHILL proceeded, pursuant to the informal direction of the Commission consisting of the same members named in I above plus one Mrs. FREDA K. THOMAS, to arrange for a hearing on the reported problem referred to as the NELSON–SEVERSON transaction.

"That Mr. BURCHILL thereafter issued a Notice of Hearing in the Matter entitled In the Matter of the Investigation of

the Alleged Unprofessional Conduct of OLIVER A. GOTTSCHALK, real estate broker for a hearing to be had in Sioux Falls on February 3, 1972, which hearing was cancelled pursuant to an Order to Show Cause served upon the Commission and each of its members at said time and place."

We conclude that these facts are insufficient to establish a violation of the appellant's constitutional right to due process.

■ The appellant in his brief asserts that Mr. Burchill, the Secretary to the Commission and its principal investigator, and the attorney hired by the Commission to prosecute the proceedings were present during the decision-making process. We assume appellant refers to the deliberations of the Commission following the presentation of testimony. Certainly, such facts would have a bearing upon the impartiality of the proceedings; however, the appellant fails to point out where in the record evidence of such conduct was established, and we are unable to locate any evidence to support those assertions.

The burden is upon the appellant to establish such facts in the record as will overcome the presumption that the Commission acted honestly, fairly and impartially. The record does not sustain a finding that the appellant met this burden.

The judgment of the circuit court affirming the order of the Commission revoking appellant's brokers license is affirmed.

All the Justices concur.