#24976-rev & rem-DG

**2009 SD 78**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

DAKOTA PLAINS AG CENTER, LLC,
and NATIONWIDE AGRIBUSINESS,                    Plaintiffs and Appellees,

  v.

MARCIA SMITHEY, as personal
representative of the Estate
of Edward Smithey,                              Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
HUTCHINSON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE GLEN W. ENG
Judge

* * * *

MARK J. ARNDT of
May & Johnson, P.C.
Sioux Falls, South Dakota            Attorneys for plaintiffs
                and appellees.


KENNETH D. BERTSCH of
Bertsch Law Office, P.C.
Menno, South Dakota                  Attorneys for defendant
                and appellant.


* * * *

ARGUED MARCH 24, 2009

OPINION FILED **08/26/09**

#24976

GILBERTSON, Chief Justice

[¶1.]          Nationwide Agribusiness (Nationwide) petitioned for Declaratory Judgment in which it sought to have the First Judicial Circuit Court determine its rights under a workers' compensation lien to proceeds from a wrongful death settlement approved by an order of the Federal District Court for the District of South Dakota.  The federal district court's order allocated damages between pecuniary loss damages and economic loss damages, and approved attorney fees at thirty percent of the total recovery.  Nationwide subsequently petitioned for Declaratory Judgment in state circuit court to determine its statutory lien and moved for summary judgment on its petition.  The circuit court granted Nationwide's motion and made all damages recovered in the federal wrongful death action available to satisfy Nationwide's lien without a determination of "like damages."  The circuit court also set the attorney fees at twenty-five percent rather than the thirty percent as approved by the federal district court.  Marcia Smithey (Marcia) appeals.

**FACTS**

[¶2.]          On November 18, 2003, Edward Smithey (Edward) was killed in the course of his employment with Dakota Plains Ag Center, L.L.C.  Edward was visiting a construction site maintained by Stueve Construction Co., and at which Little Walls, L.L.C., was a subcontractor when he fell into a thirteen-foot open pit and died of his injuries.  Edward, age thirty-eight at the time of his death, left behind a wife, Marcia, and two sons ages ten and six.  Nationwide, the workers' compensation carrier for Edward's employer, paid benefits to Edward's estate as

follows: medical expenses of $15,377.19; funeral expenses of $5,600.81; death benefits of $5,180.00; and the purchase price of a replacement annuity for future death benefits of $460,715.00. Benefits paid by Nationwide totaled $486,873.00.

[¶3.] On May 10, 2004, Marcia, in her capacity as personal representative of Edward's estate, brought a tort claim in Federal District Court for the District of South Dakota against Stueve Construction and Little Walls. Marcia alleged the defendants were negligent in "failing to properly barricade, failing to provide adequate lighting to prevent Smithey from falling in the hole on the construction site, and failing to properly inspect the . . . [p]roject site for safety." Smithey v. Stueve Const Co., 2007 WL 172511, *2 (DSD 2007). The parties attempted to mediate the matter prior to trial.

[¶4.] Nationwide refused to participate in the mediation attempts despite being requested to attend by Marcia's counsel and by letters from the mediator, Michael Luce, dated April 23, 2007, and May 10, 2007. Marcia's counsel also requested Nationwide's attendance by telephone on April 27, 2007. Nationwide and Marcia were unable to reach a settlement regarding Nationwide's lien, which Nationwide refused to settle at less that the full $486,873.00 it paid in workers' compensation benefits.

[¶5.] Shortly before the trial date and after two days of mediation, Marcia and the defendants reached a settlement agreement in the federal district court wrongful death action. On July 5, 2007, Marcia petitioned the federal district court for approval of the settlement negotiated by the parties per the provisions of SDCL 21-5-6, as a portion of the settlement proceeds were allocated to Marcia and

Edward's two minor children.[1]  The parties agreed to settle all claims in exchange

for $1,090,000.00.  Marcia's petition allocated $872,000.00, or eighty-percent, for

pecuniary loss damages ("the loss of [Edward's] society, companionship, protection,

guidance, advice and assistance") and the balance of $218,000.00, or twenty-

percent, as economic loss damages.  Out of the non-economic loss damages of

$872,000.00, each of the two minor children received an allocation of $75,000.00,

and Marcia received an allocation of $541,404.90.  Marcia also requested approval

of attorney fees of $352,703.58 or thirty percent of the proceeds, costs of $31,783.44,

and sales tax in the amount of $14,108.14.

[¶6.]        On July 26, 2007, Nationwide moved to intervene in the federal district

court action.  The federal district court found Nationwide's motion to intervene was

untimely per Federal Rule of Civil Procedure Rule 24(a)(2).[2]  The court noted in its

---

1.      SDCL 21-5-6 provides in relevant part:

> Such personal representative may at any time before or after the
> commencement of a suit for wrongful death settle with the
> defendant the amount to be paid to him as damages for the
> wrongful death of the decedent.  If such personal representative
> was appointed in this state and settlement is made before the
> commencement of a suit such settlement must have the
> approval of the court of the representative's appointment.  If
> settlement is made at any time after the commencement of suit,
> whether before or after judgment therein, such settlement must
> have the consent and approval of the court wherein the action is
> pending; provided, however, that if the personal representative
> was appointed in this state he may make such settlement upon
> the consent and approval of either the court wherein the action
> is pending or the court of his appointment.

2.      Federal Rule of Civil Procedure Rule 24(a)(2) provides:

(continued . . .)

findings of fact accompanying its order on Nationwide's motion that "Nationwide was aware of the progress of the litigation at issue and deliberately chose not to become involved until after the parties had reached a settlement agreement." The court also found Nationwide failed to provide an explanation for why it had declined to participate in the litigation or mediation during the three years the case was pending. The court further found that permitting Nationwide to intervene at that juncture would result in substantial prejudice to all parties. Finally, the court found that Nationwide's untimely intervention threatened the resolution reached by the parties, and would prejudice the beneficiaries of the wrongful death claim by further delaying the receipt of proceeds. The court denied Nationwide's motion to intervene.

[¶7.]        The federal district court approved the settlement as presented by the parties. Based on the order as entered by the federal district court, Marcia calculated Nationwide's recovery under its statutory lien as follows:

Nationwide's prorata recovery ($218,000.00/$1,090,000.00) = 20%

| | |
|---|---|
| Economic loss damages | $218,000.00 |
| Attorney fees ($352,703.58 x 20%) | (  70,540.72) |
| Costs ($31,783.44 x 20%)) | (   6,356.69) |
| Sales Tax ($14,108.14 x 20%) | (   2,821.63) |

---

(. . . continued)

> On timely motion, the court must permit anyone to intervene who:
>
> . . .
>
>  (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Net recovery to Nationwide $138,280.96

[¶8.] Nationwide then moved the federal district court, pursuant to Rule 60(b)(1), to reconsider the court's order denying as untimely Nationwide's motion to intervene and approving the settlement agreement reached by the parties. [3] The court found Nationwide was a non-party to the action and, therefore, denied Nationwide's motion. The court also noted that Marcia was required to obtain approval of the settlement under SDCL 21-5-6 because some settlement proceeds were allocated to minor children. Otherwise, no court approval would have been necessary for the settlement. *See* SDCL 21-5-6. The federal district court's order also provided: "the settlement agreement's apportionment of a portion of damages as 'pecuniary' does not necessary foreclose Nationwide from obtaining funds designated as such."

[¶9.] After the denial of its motions in federal district court, Nationwide filed a declaratory judgment action in the First Judicial Circuit against Marcia in her representative capacity. In its petition, Nationwide asserted it was entitled to its full lien in the amount of the $486,873.00 it paid in workers' compensation

---

3. Federal Rule of Civil Procedure Rule 60 provides the manner in which relief from a judgment or order may be obtained. It provides in relevant part:

. . .

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect[.]

benefits. Nationwide also alleged attorney fees for the federal district court action were statutorily limited by SDCL 62-7-36 to a maximum of twenty-five percent of the settlement, from which Marcia was entitled to deduct Nationwide's prorata share. Nationwide further alleged that Marcia had not reached an agreement with Nationwide regarding its lien amount, and had failed to file a declaratory judgment action regarding the lien. Instead, Nationwide asserted that Marcia had petitioned the federal district court for approval of the settlement with an apportionment of the proceeds between pecuniary loss damages and economic loss damages, and no allocation to Nationwide for its lien as a way to obtain a double recovery of workers' compensation benefits and tort damages for the same losses.

[¶10.] Nationwide filed a motion for summary judgment in the matter. In its statement of material facts, Nationwide stated that Marcia had included in her petition to the federal district court for approval of the settlement a document entitled "Preliminary Economic Loss Appraisal for Edward Smithey," authored by Dr. Ralph J. Brown. The report calculated the economic wage loss to Smithey's estate between $2,087,474.00 and $2,247,309.00. Nationwide alleged that the settlement failed to allocate the pecuniary loss damages of $872,000.00 between economic versus non-economic losses. Thus, it argued the entire amount allocated to pecuniary loss damages plus the economic loss damages portion of the settlement was subject to Nationwide's lien.

[¶11.] Regarding the attorney fees awarded in the federal district court settlement, Nationwide argued to the circuit court that the thirty-five percent allocation exceeded the amount permitted by SDCL 62-7-36. SDCL 62-7-36

provides in relevant part: "Attorneys' fees may not exceed the percentage of the amount of compensation benefits secured as a result of the attorney's involvement as follows: (1) Twenty-five percent of the disputed amount arrived at by settlement of the parties[.]" Nationwide argued that the twenty-five percent limitation on attorney fees in SDCL 62-7-36(1) applied to the wrongful death tort claim as the thirty-five percent maximum attorney fee rate in SDCL 62-4-39 was modified by virtue of the language "subject to SDCL § 62-7-36" contained in SDCL 62-4-39. Under its theories on the issue of pecuniary loss damages and attorney fees, Nationwide calculated its lien as follows:

Nationwide's prorata recovery ($486,873.00/$1,090,000.00) = 43%

| | |
|---|---|
| Economic losses paid by Nationwide | $ 486,873.00 |
| Attorney fees (1,090,000.00 x 25%) x 43% | ( 116,590.00) |
| Costs ( 43% of costs) | ( 6,356.69) [4] |
| Net recovery to Nationwide | $ 349,770.00 |

[¶12.]     Marcia filed a response to Nationwide's petition in which she alleged that she settled for $218,000.00 or just ten-percent of the estimated preliminary economic wage loss as contained in Dr. Brown's report. She further argued that the balance of the settlement was for pecuniary, meaning non-economic, losses. At the hearing on Nationwide's motion for summary judgment, Marcia argued she should

---

4.     It appears that Marcia deducted a prorata share of sales tax from Nationwide's recovery in her scenario, but no allocation for sales tax was included in Nationwide's calculations before the circuit court. Furthermore, Nationwide's calculations appear at odds with the circuit court's finding of fact number twenty-six, in which it is noted that the parties stipulated that expenses totaled $45,891.58 of which $31,783.44 represented costs, and $14,108.14 represented sales tax. The circuit court set Nationwide's share of expenses at 44.7 percent of $45,891.58 for a total of $20,513.54.

have the opportunity to present evidence as to the full value of the non-economic losses. Marcia contended she would be able to show that the pecuniary losses incurred by her and her children would exceed the economic losses incurred by Edward's estate as estimated by the expert witness in the federal action. Marcia also argued that under SDCL 62-4-39, the federal district court had the discretion to set attorney fees and expenses at a maximum of thirty-five percent. SDCL 62-4-39 provides:

> If compensation has been awarded and paid under this title and the employee has recovered damages from another person, the employer having paid the compensation may recover from the employee an amount equal to the amount of compensation paid by the employer to the employee, less the necessary and reasonable expense of collecting the same, which expenses may include an attorney's fee not in excess of thirty-five percent of compensation paid, subject to § 62-7-36.

She claimed that because the federal court approved attorney fees at thirty percent, well below the maximum permitted under SDCL 62-4-39, the federal court's order should not have been modified by the circuit court.

[¶13.] The circuit court subsequently held a hearing on Nationwide's motion for summary judgment. The circuit court determined that under this Court's holding in *Zoss v. Dakota Truck Underwriters*, (*Zoss II*), 1999 SD 37, ¶11-15, 590 NW2d 911, 913-14, pecuniary losses include both economic and non-economic losses. It further found that the federal district court did not allocate the $872,000.00 in pecuniary loss damages between economic and non-economic loss damages. The circuit court held that the entire amount of the pecuniary loss damages allocation plus the portion allocated to economic loss damages were available to satisfy Nationwide's lien, less its prorata share of attorney fees and expenses incurred in

the federal district court litigation against the third party tortfeasors. The circuit court found that the provisions of SDCL 62-4-39 permitting a maximum of thirty-five percent in attorney fees was modified by the provisions in SDCL 62-7-36. Thus, it concluded that the maximum amount in attorney fees permitted in the federal district court litigation was limited to twenty-five percent because the suit had settled prior to trial. The circuit court's calculations were as follows:

Nationwide's lien of $486,873 = 44.7% of the $1,090.000.00 recovery

| | |
|---|---|
| Step 1 of *Zoss* formula: | |
| Economic losses paid by Nationwide | $ 486,873.00 |
| Less Nationwide's share of expenses (44.7% x 45,891.58) | ( 20,513.00)[5] |
| Step 1 subtotal | $ 466,360.00 |
| | |
| Step 2 of *Zoss* formula: | |
| Attorney fees (466,360 x 25%) | ( 116,590.00) |
| Net recovery to Nationwide | $ 349,770.00 |
| | |
| Net recovery to Estate ($1,090,000.00 – $349,770.00) | $740,230.00 |

The circuit court concluded that the Smithey Estate's share of the settlement proceeds was limited to $740,230.00 to prevent a double recovery of workers' compensation benefits as precluded under Zoss v. Dakota Truck Underwriters, 1998 SD 23, 575 NW2d 285 (Zoss I), and *Zoss II*. The circuit court's decision to grant Nationwide's motion for summary judgment was made without a full evidentiary hearing, and no fact finding as to the allocation of economic versus non-economic loss damages within the category of pecuniary loss damages in the federal settlement, or the amount of actual pecuniary loss damages suffered by Marcia and her two sons.

---

5. The circuit court rounded-up to the closest dollar amount.

[¶14.]    Although the circuit court entered summary judgment, it further entered findings of fact and conclusions of law.  Marcia objected to the circuit court's findings of fact and conclusions of law.  Marcia appeals in her representative capacity and raises the following issues:

1.    Whether the federal district court's approval of the settlement proceeds between pecuniary loss damages and economic loss damages was a final ruling as to what portions of the settlement proceeds were "like damages" for purposes of SDCL 62-4-38.

2.    Whether a state circuit court is required to hold a full evidentiary hearing before determining the amount of pecuniary loss damages obtained in a separate wrongful death tort action available to satisfy a statutory workers' compensation lien under SDCL 62-4-38.

3.    Whether attorney fees in a wrongful death tort claim for which workers' compensation benefits have been paid are limited by SDCL 62-7-36(1) to twenty-five percent when the wrongful death tort claim is settled prior to trial.

## STANDARD OF REVIEW

Our standard of review on summary judgment requires this Court to determine whether the moving party has demonstrated the absence of any genuine issue of material fact and entitlement to judgment on the merits as a matter of law.  The circuit court's conclusions of law are reviewed de novo. However, all facts and favorable inferences from those facts must be viewed in a light most favorable to the nonmoving party.  We will affirm the circuit court's ruling on a motion for summary judgment when any basis exists to support its ruling.

Weitzel v. Sioux Valley Heart Partners, 2006 SD 45, ¶16, 714 NW2d 884, 891 (internal citations omitted).  We also review issues of statutory construction under the de novo standard of review.  Discover Bank v. Stanley, 2008 SD 111, ¶15, 757 NW2d, 756, 761 (citing Martinmaas v. Engleman, 2000 SD 85, ¶49, 612 NW2d 600, 611).

## ANALYSIS AND DECISION

[¶15.]    1.    **Whether the federal district court's approval of the settlement proceeds between pecuniary loss damages and economic loss damages was a final ruling as to what portions of the settlement proceeds were "like damages" for purposes of SDCL 62-4-38.**

[¶16.]    Marcia argues on appeal that Nationwide filed its declaratory action in state circuit court in order to modify the federal district court's order allocating settlement proceeds between pecuniary loss damages and economic loss damages. Marcia contends that the federal district court's order was a final determination as to what damages were economic, and thus "like damages" for purposes of Nationwide's subrogation lien. Marcia further contends that the circuit court was without jurisdiction to modify the federal district court's order per the doctrine of res judicata.

[¶17.]    In response, Nationwide argues that the circuit court did not modify the federal district court's order. Instead, Nationwide argues that pecuniary loss damages to which the federal district court allocated $872,000.00 included both economic and non-economic loss damages. As such, Nationwide argues, the fact that the federal district court did not allocate pecuniary loss damages between economic and non-economic loss damages makes the entire amount available as "like damages" under SDCL 62-4-38.

[¶18.]    SDCL 62-4-38 provides:

> If an injury for which compensation is payable under this title has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may, at the employee's option, either claim compensation or proceed at law against such other person to recover damages or proceed against both the

> employer and such other person. However, *in the event the injured employee recovers any like damages from such other person*, the recovered damages shall be an offset against any workers' compensation which the employee would otherwise have been entitled to receive.

The question before this Court is whether the federal district court's approval of the settlement proceeds between pecuniary loss damages and economic loss damages was a final ruling as to what portions of the settlement proceeds were "like damages" for purposes of SDCL 62-4-38.

[¶19.] The doctrine of res judicata bars any "attempt to relitigate a cause of action by the parties or one of the parties in privity to a party to an earlier suit." Speck v. Federal Land Bank of Omaha, 494 NW2d 628, 633 (SD 1993) (citing Merchants State Bank v. Light, 458 NW2d 792 (SD 1990); Bank of Hoven v. Rausch, 449 NW2d 263 (SD 1989)). The doctrine "embodies both *merger* and *bar*[.]" Black Hills Jewerly Mfg. Co. v. Felco Jewel Indus., Inc., 336 NW2d 153, 157 (SD 1983) (citing Palma v. Powers, 295 FSupp 924 (NDIll 1969)). "Res judicata serves as *claim* preclusion to prevent relitigation of an *issue actually litigated or which could have been properly raised and determined* in a prior action." *Id.* (citing Matter of Estate of Nelson, 330 NW2d 151 (SD 1983); Schmidt v. Zellmer, 298 NW2d 178 (SD 1980); Gottschalk v. South Dakota State Real Estate Comm'n, 265 NW2d 905 (SD 1978))). Res judicata also requires that the court in which the matter was litigated have had jurisdiction and have issued a final and unreversed decision. *Id.* (citing Keith v. Willers Truck Serv., 65 SD 274, 266 NW2d 256 (1936)).

[¶20.] In order for res judicata to apply, the cause of action in the prior litigation must be the same as the cause of action in the subsequent litigation. *Id.*

This Court adopted the broad test in *Hanson v. Hunt Oil Co.*, 505 F2d 1237 (8thCir 1974), for determining if both causes of action are the same. *Id.* A cause of action is comprised of the facts that gave rise to, or established, the right the party seeks to enforce. *Id.* (citations omitted). If the wrong sought to be redressed is the same in both actions, then res judicata applies. *Id.* (citing Woodbury v. Porter, 158 F2d 194 (8thCir 1946)).

[¶21.]     In the instant case, the facts that gave rise to Marcia's wrongful death claim in federal court were different from the facts that gave rise to Nationwide's lien for workers' compensation benefits. Marcia's claim hinged on the conduct of the alleged tortfeasors and whether they were liable for any damages for Edward's death. In addition, Marcia's claim for wrongful death accrued upon Edward's death. Nationwide's claim arose under the statutory lien as provided in SDCL 62-4-38 after it first determined that Edward's death occurred in the course of his employment and it paid workers' compensation benefits to Marcia. The issue of who was legally responsible for Edward's death, the issue in the federal district court action, was not relevant to the determination of the amount of benefits Nationwide was required to pay, or the amount it could recover under its statutory lien. Furthermore, the amount of Nationwide's lien was never at issue in the federal district court wrongful death action.

[¶22.]     The process by which to determine how much a workers' compensation carrier may recover under its statutory lien after an employee or the employee's estate is able to recover tort damages for "like damages" is set out in *Zoss I*, 1998 SD 23, ¶13, 575 NW2d at 262. The holding in *Zoss I* requires the employee or

personal representative to proceed under one of two alternative courses of action: either obtain an express allocation in the settlement *or* a judicial determination of the non-economic losses to which a workers' compensation lien cannot attach. *Id*. A settlement will be given legal effect as to portions subject to the workers' compensation insurer's lien when "the issue is fully and fairly tried before an impartial fact finder or where the insurance carrier is invited to participate in settlement negotiations." *Id*., 1998 SD 23, ¶14 n4, 575 NW2d at 263 n4.

[¶23.]     The issue of how much of the damages recovered by Edward's estate could be used to satisfy Nationwide's lien could not have been litigated before the jury in the federal district court wrongful death action. That issue would have needed to come before the federal district court as a declaratory judgment action and not a wrongful death tort action as it did in this instance. *See Zoss I*, 1998 SD 23, ¶13, 575 NW2d at 262 (holding a declaratory judgment action is one of two possible methods to be used in determining a workers' compensation insurer's right to proceeds from a suit or settlement with third party tortfeasors). Furthermore, the issue of Nationwide's lien was never addressed by the federal district court in its order approving the settlement between Marcia and the alleged tortfeasors. Instead, the federal court acknowledged its approval of the settlement did not "foreclose Nationwide from obtaining funds" designated as pecuniary loss damages.

[¶24.]     All that Marcia obtained from the federal district court was an express allocation between pecuniary loss damages and economic loss damages as part of its approval of the terms of the settlement of the wrongful death action and approval of the proceeds allocated to her children. Marcia did not obtain an express allocation

-14-

of what portion, if any, of the settlement proceeds were "like damages" for purposes of SDCL 62-4-38 as required under *Zoss I*. Nor did the federal court, as it specifically noted, attempt such an allocation in an effort to settle all accounts including the workers' compensation lien.

[¶25.]    Hence, res judicata did not apply to the issue before the circuit court and the determination of Nationwide's lien was properly before it. The circuit court did not err when it considered the declaratory action brought by Nationwide as it did not attempt to modify an order issued by the federal district court.

[¶26.]    **2.    Whether a state circuit court is required to hold a full evidentiary hearing before determining the amount of pecuniary loss damages obtained in a separate wrongful death tort action available to satisfy a statutory workers' compensation lien under SDCL 62-38.**

[¶27.]    Nationwide argued at the hearing on its motion for summary judgment that under this Court's holding in *Zoss II*, 1999 SD 37, 590 NW2d 911, pecuniary damages include both economic loss damages and non-economic loss damages. The circuit court accepted Nationwide's argument. It then found that because the federal district court did not allocate the pecuniary loss damages awarded to Marcia as either economic or non-economic in nature, the entire $872,000.00 in pecuniary loss damages plus the $218,000.00 in economic loss damages were "like damages" for purposes of SDCL 62-4-38.

[¶28.]    Marcia argues on appeal that the circuit court was required to hold a full evidentiary hearing on the issue. Marcia argues that the report submitted by her damages expert in the federal court proceedings did not provide any calculation of the non-economic losses. Instead, it estimated only the economic damages.

Marcia acknowledges that the amount of economic losses for Edward's death were between $2,087,474.00 and $2,247,309.00. Marcia contends that she may well have been able to establish that the entire amount allocated as pecuniary damages was for non-economic loss damages incurred by her and her two minor children. Marcia argues the non-economic loss damages were potentially six to eight times the amount of the economic loss damages.

[¶29.] Nationwide relies on one line in *Zoss II* in support of its argument that the pecuniary loss damages included both economic and non-economic losses: "pecuniary injury encompasses more than strictly economic losses . . . ." *See id.*, 1999 SD 37, ¶11, 590 NW2d at 913. However, the full sentence was not quoted by Nationwide in its brief, which reads as follows:

> pecuniary injury encompasses more than strictly economic losses in that it includes "the loss of decedent's companionship and society as expressed by, but not limited to, the words 'advice,' 'assistance,' and 'protection,' but without consideration for the grief and mental anguish suffered by the beneficiaries because of the wrongful death."

*Id.*, 590 NW2d at 913-14.

[¶30.] The narrow holding of that case was that "the terms 'loss of consortium' and 'pecuniary loss' are not co-extensive and must not be used interchangeably." *Id.* ¶15. We also held that a surviving spouse "should have the opportunity to prove the amount, if any, of the settlement that compensates her for such pecuniary loss" damages that are not "like damages" within the meaning of SDCL 62-4-38. *Id.* ¶16. We then remanded the issue to the circuit court to separate the damages that were not like damages from "like damages" *after a full evidentiary hearing. Id.* ¶18.

[¶31.]     In the instant case, Nationwide paid Edward's estate for economic loss damages including medical expenses, burial expenses, death benefits, and future death benefits.  Nationwide did not pay benefits to the estate for the loss of Edward's society and companionship, or the loss of his protection, guidance, advice and assistance.  An action for these damages "'is not brought by the spouse as the personal representative of the employee, but is an independent action to recover for injuries the spouse has suffered, such as loss of support and loss of society.'" *Zoss I*, 1998 SD 23, ¶12, 575 NW2d at 262  Thus, "the workers' compensation lien does not attach to that portion of the settlement proceeds designated as a settlement of [a] widow's claim for loss of consortium." *Id.*  There is nothing in our workers' compensation code that permits an insurer to recover its workers' compensation lien from damages that were recovered by the spouse in an independent action for injuries the spouse suffered.

[¶32.]     This view is illustrated in the United States Supreme Court's analysis in its 2006 decision in *Arkansas Dep't. of Health and Human Serv. v. Ahlborn*, in the context of ERISA subrogation.  547 US 268, 288, n19, 126 SCt 1752, 1755, n19, 164 LEd2d 459 (2006) (quoting Flanigan v. Dep't of Labor and Indus., 869 P2d 14, 17 (Wash 1994)).  An insurer may not recover its statutory right of reimbursement under ERISA for medical bills it paid on behalf of an employee from funds recovered from a third party tortfeasor for other damages incurred by the spouse or child.  *Id.*  Allowing an ERISA plan to recover its lien from damages obtained from a third party tortfeasor that were intended to compensate the employee's family for non-medical damages incurred by the employee's family would permit the insured a

"share in damages for which it has provided no compensation." *Id.* (quoting *Flanigan*, 869 P2d at 17)). Such a result would be "absurd and fundamentally unjust." *Id.*

[¶33.] While in the context of an ERISA claim, the point is also well taken in the context of workers' compensation benefits. As the Supreme Court of Washington noted in *Flanigan*, payment of workers' compensation benefits to an employee who then recovers from a third party responsible for the injuries incurred by the employee does not automatically result in a "double recovery" by the employee. 869 P2d at 17. "[T]he employee receives a double recovery only if the third party recovery is for damages which are already compensated for by workers' compensation benefits." *Id.* The Washington court went on to hold that if the department were allowed to recover from damages paid by a third party that were intended to compensate the employee or his family for injuries other than those for which the department paid workers' compensation benefits, the department would receive a windfall. *Id.*

[¶34.] In the instant case if we were to do as Nationwide argues, and as the circuit court did below, we would allow Nationwide a windfall to which it is not entitled. Moreover, our statutory scheme does not permit Nationwide a recovery against any portion of the non-economic loss damages obtained by Marcia and her sons in a suit against third party tortfeasors, as Nationwide did not pay workers' compensation benefits that represented an award for these damages. *See* SDCL 62-4-38 (limits recovery against only "like damages.") The circuit court's order allowed Nationwide to "share in damages for which it ha[d] provided no compensation" to

Edward's estate. Such an "absurd and fundamentally unjust" result is against the provisions of SDCL 62-4-38.

[¶35.] There was no opportunity for Marcia to present evidence and to argue in a declaratory judgment action what portion of the pecuniary loss damages were for the loss of Edward's society and companionship, including the loss of his protection, guidance, advice and assistance, as opposed to economic losses. The amount of "like damages" remained a disputed material fact after the circuit court hearing. The amount was never determined by settlement or in a declaratory judgment action. Instead, Nationwide was able to prevail on its motion for summary judgment while the material fact as to the proper allocation remained in dispute.

[¶36.] Given that Nationwide refused to enter into a binding settlement agreement regarding its lien, the only other avenue available to the parties to determine the lien amount under *Zoss I* was for the issue to be tried "fully and fairly before an impartial fact finder." *See Zoss I*, 1998 SD 23, ¶14, n4, 575 NW2d at 263, n4. While Marcia argues that Nationwide's failure to participate in the negotiations should preclude it from obtaining its full lien, we do not agree. Nationwide responded to the invitation by stating clearly it would not compromise its subrogation claim. It would have been expedient, and in keeping with our preferred method as stated in *Zoss I*, to have Nationwide at the table and to have resolved all issues via settlement negotiations. The holding in *Zoss I*, however, clearly allows the alternative method of trial before an impartial finder of fact, instead of settlement negotiations, to be used to determine the amount of "like damages." *Id*.

[¶37.]     While this Court stated its *preference* in *Zoss I* that a declaratory judgment action occurs prior to settlement or suit with the tortfeasor, that sequence is not required by any statute or court rule. We also note that it may not be possible to determine the workers' compensation lien prior to knowing the amount of recovery from a third party tortfeasor. Step three of the *Zoss I* formula assumes that the amount recovered from a third party tortfeasor is known and the allocation between "like damages" and other types of damages from which a workers' compensation lien may not be satisfied is also known. *See id.* ¶17, 575 NW2d at 263 (each step of the formula assumes the amount of the third party recovery is known). It is not possible to calculate any steps of the *Zoss I* formula if the declaratory judgment action to determine the workers' compensation insurer's lien is filed before any negotiations or settlement with the third party tortfeasor has been attempted. The better course of conduct is for the insurer to participate in the negotiations with the third party tortfeasor and for all interested parties to attempt resolution after the amount of any third party recovery is known.

[¶38.]     We decline Nationwide's invitation to punish the estate by subjecting all proceeds to Nationwide's lien for the estate's failure to file a declaratory judgment action first to determine the amount of Nationwide's lien before pursing the wrongful death action against the tortfeasors in federal district court. We will not penalize the estate for going forward with a settlement or suit against the tortfeasor when the insurer refused to participate in settlement negotiations to which the insurer received ample notice and multiple invitations. To do as Nationwide suggests is to allow an insurer to hold the estate hostage. An insurer

could refuse to litigate against the tortfeasor directly under SDCL 62-4-40; refuse to enter into settlement negotiations with the estate; wait until the litigation between the estate and the tortfeasors is completed, and then move to collect its lien against all proceeds obtained by the estate from the tortfeasor. If we allow Nationwide's argument to prevail and allow it to enforce its subrogation lien against all damages regardless of whether they are "like damages," we in effect would punish the estate for not filing the declaratory action first before proceeding against the tortfeasor when we have noted there are *two* options for determining the insurer's lien.

[¶39.] Moreover, this is not a matter of equitable division based on the conduct of the parties. We are engaged in an issue of statutory construction. Again, we reiterate that the preferred method is to determine the lien value before final settlement with a third party tortfeasor. When that is not possible due to the resistance of one party or the other to settlement negotiations, the sequencing of declaratory action and the action against a third party cannot be the determining factor for deciding what are "like damages" under SDCL 62-4-38.

[¶40.] The circuit court erred when it found that Marcia's failure to request a further sub-allocation from the federal district court of the pecuniary loss damages between economic and non-economic loss damages made the entire amount available as "like damages" for purposes of SDCL 62-4-38. Instead, a genuine issue of material fact existed as to amount of economic losses versus non-economic losses included in the damages labeled as "pecuniary loss damages," which required a full and fair hearing on the issue.

[¶41.] **3.** **Whether attorney fees in a wrongful death tort claim for which workers' compensation benefits have been paid are limited by SDCL 62-7-36(1) to twenty-five percent when the wrongful death tort claim is settled prior to trial.**

[¶42.] The federal district court approved a settlement between Marcia and the tortfeasors that included an allocation of thirty percent for attorneys' fees. That court did not consider what portion of those attorney fees should be setoff against the subrogation lien because the amount of Nationwide's lien was never before that court. It merely approved the application as presented by Marcia.

[¶43.] Nationwide argued to the circuit court that the attorneys' fees for the workers' compensation claim and the subrogation issue should have been limited to twenty-five percent based on the language of SDCL 62-7-36(1). SDCL 62-7-36 provides:

> Except as otherwise provided, fees for legal services under this title shall be subject to approval of the department.
>
> Attorneys' fees may not exceed the percentage of the amount of compensation benefits secured as a result of the attorney's involvement as follows:
>
> (1) *Twenty-five percent of the disputed amount arrived at by settlement of the parties*;
>
> (2) Thirty percent of the disputed amount awarded by the Department of Labor after hearing or through appeal to circuit court;
>
> (3) Thirty-five percent of the disputed amount awarded if an appeal is successful to the Supreme Court.
>
> Attorneys' fees and costs may be paid in a lump sum on the present value of the settlement or adjudicated amount.

(Emphasis added).  Marcia argued to the circuit court that the language in SDCL 62-4-39 allowed for a maximum of thirty-five percent for attorneys' fees:

> If compensation has been awarded and paid under this title and the employee has recovered damages from another person, the employer having paid the compensation may recover from the employee an amount equal to the amount of compensation paid by the employer to the employee, less the necessary and reasonable expense of collecting the same, which expenses may include an attorney's fee not in excess of thirty-five percent of compensation paid, subject to § 62-7-36.

SDCL 62-4-39.  The circuit court used the twenty-five percent limitation in SDCL 62-7-36(1) and rejected Marcia's arguments in support of the thirty percent attorneys' fee approved by the federal district court.

[¶44.]     Marcia argues on appeal that the circuit court erred when it limited attorneys' fees to twenty-five percent of the settlement amount.  She contends that the last clause in SDCL 62-4-39, "subject to § 62-7-36" pertains only to the last sentence of SDCL 62-7-36, which provides "[a]ttorneys' fees and costs may be paid in a lump sum on the present value of the settlement or adjudicated amount[.]"  She argues that the limitation in SDCL 62-7-36 is triggered only when a settlement between the employee, or the estate of the employee, and the third party tortfeasor is to be paid out over a period of years.  In the event of a multi-year payout of settlement proceeds, the limitation would permit a maximum of thirty-five percent for attorneys' fees times the "present value" of the sum total of the payments rather than thirty-five percent of each payment to be received in the future.  Marcia argues that because the settlement she arrived at with the third party tortfeasors was for a lump sum payment, the limitation in SDCL 62-7-36 on using the "present value" of a multi-year settlement did not apply to the fact of this case.

[¶45.]        Instead, Marcia argues the only limitation on attorneys' fees when an estate recovers damages from a tortfeasor after workers' compensation benefits have been paid by an insurer is contained in SDCL 62-4-39, which limits the estate's attorneys' fees to a maximum of thirty-five percent of the total settlement with the tortfeasor.  She further argues that the twenty-five percent limitation on attorney fees when settlement has been reached as found in SDCL 62-7-36(1) pertains only to the attorney fees expended by an employee, or his or her estate, in obtaining workers' compensation benefits from an employer and its insurer.  Marcia further contends that reading the twenty-five percent limitation found in SDCL 62-7-36(1) that pertains to attorney's fees expended in obtaining a settlement for workers' compensation benefits from an employer and its insurer into the provisions in SDCL 62-4-39, which pertains to the recovery of damages from a third party after workers compensation benefits have been paid, renders the language in SDCL 62-4-39 "which expenses may include an attorney's fee not in excess of thirty-five percent of compensation paid" superfluous.

[¶46.]        Nationwide contends that the language in SDCL 62-4-39, "subject to § 62-7-36" pertains to the percentage limitations provided in SDCL 62-7-36.  It argues that the circuit court was correct when it limited the deduction for attorney fees expended in obtaining the settlement with the third party tortfeasors to twenty-five percent.

[¶47.]        "Statutory construction is employed to discover the true intent of the legislature in enacting laws, which is ascertained primarily from the language employed in the statute.  We give words their plain meaning and effect, and read

statutes as a whole, as well as enactments relating to the same subject." Chapman v. Chapman, 2006 SD 36, ¶11, 713 NW2d 572, 576 (SD 2006) (quoting State v. Myrl & Roy's Paving, Inc., 2004 SD 98, ¶6, 686 NW2d 651, 653). We construe statues in their entirety. *Discover Bank*, 2008 SD 111, ¶21, 757 NW2d at 762 (citing Jensen v. Turner County Bd. of Adjustment, 2007 SD 28, ¶12, 730 NW2d 411, 415). We also read statutes with the underlying assumption that the Legislature did not insert surplusage into its enactments. National Farmers Union Property and Cas. Co. v. Universal Underwriters Ins. Co., 534 NW2d 63, 65 (SD 1995) (citing Revier v. School Bd. of Sioux Falls, 300 NW2d 55, 57 (SD 1981)). Furthermore,

> Since statutes must be construed according to their intent, the intent must be determined from the statute as a whole, as well as enactments relating to the same subject. But, in construing statutes together it is presumed that the legislature did not intend an absurd or unreasonable result. When the question is which of two enactments the legislature intended to apply to a particular situation, terms of a statute relating to a particular subject will prevail over the general terms of another statute.

State v. I-90 Truck Haven Serv., Inc., 2003 SD 51, ¶3, 662 NW2d 288, 290 (quoting *Martinmaas,* 2000 SD 85, ¶49, 612 NW2d at 611).

[¶48.]     The language in SDCL 62-7-36 that limits attorney's fees to a percentage based on what stage of litigation is required to achieve an award of workers' compensation benefits, provides that the limitations pertain to legal services rendered "under this title" and further requires "approval of the department." *See* SDCL 62-7-36. The words "under this title" indicate that the limitations apply to legal services used by an employee to obtain workers' compensation benefits from his or her employer and its insurer under Chapter 62, Title 7. SDCL 62-7-36.

[¶49.]      The language in SDCL 62-4-39 that limits attorneys' fees to thirty-five percent indicates that it applies to the recovery of damages from a third party when workers' compensation benefits have also been awarded to an employee under Chapter 62, Title 4.  SDCL 62-4-39.  *See also Zoss I*, 1998 SD 23, ¶17, 575 NW2d at 263.  There is no differentiation contained within the language of SDCL 62-4-39 as to the maximum rate of attorney fees that may be charged based on whether the tort claim against a third party is settled prior to trial, at trial, or is resolved on appeal.  *Id.*

[¶50.]      If we were to graft the three levels of attorney fees contained in SDCL 62-7-36 onto the provisions of SDCL 62-4-39 as suggested by Nationwide, the result would be absurd.  SDCL 62-4-39 would then indicate that attorney fees of thirty percent could only result when a disputed amount was awarded by the Department of Labor – something that cannot happen in a tort claim, as such a claim would never be heard by the Department of Labor.  In addition, it would also render the maximum limitation language in SDCL 62-4-39 superfluous as the maximum rate is also contained in SDCL 62-7-36.  Finally, our holding in *Zoss I* indicates that thirty-five percent is the maximum percentage for attorney fees as provided under SDCL 62-4-39 when a workers' compensation lien is involved, but contains no differentiation for damages obtained via settlement, trial, or appeal.  *Id.* (holding that thirty-five percent was the maximum range for attorney fees in a wrongful death suit that resulted in a settlement between Zoss's estate and a third party tortfeasor).

[¶51.]     The circuit court erred when it limited attorney fees from the federal tort claim action to twenty-five percent. Those attorney fees were set by the federal district at thirty percent, and were within the statutory maximum of thirty-five percent as limited by SDCL 62-4-39.

[¶52.]     The circuit court's order is reversed and remanded with direction to hold a full hearing on the issue of economic versus non-economic loss damages included in the $1,090,000.00 settlement. After that amount is determined and the prorata shares determined for each party, the circuit court must use the thirty percent attorney fee rate approved by the federal district court in determining the funds available to satisfy Nationwide's lien using the formula detailed in this Court's holding in *Zoss I* and *Zoss II*.

[¶53.]     Reversed and remanded.

[¶54.]     KONENKAMP, ZINTER, and MEIERHENRY, Justices, and SABERS, Retired Justice, concur.